480 32 Mass. App. Ct. 480

K. Hovnanian at Taunton, Inc. *v.* Planning Board of Taunton.

K. HOVNANIAN AT TAUNTON, INC. *vs.* PLANNING BOARD
OF TAUNTON.

No. 90-P-1299.

Bristol. February 13, 1992. - May 4, 1992.

Present: DREBEN, GILLERMAN, & PORADA, JJ.

*Subdivision Control*, Appeal, Decision of planning board, Regulations,
Conditions, Plan, Board of health, Municipal services. *Municipal Cor-
porations*, Sewers.

A city planning board did not exceed its authority in denying approval of
definitive subdivision plans on the ground that "[t]here is no sewer tie-
in," where the board reasonably required a demonstration that "per-
fected arrangements" have been made for the interconnection to the
municipal sewer system shown on the subdivision plans; where, because
a demonstration that all arrangements were in place was not made, the
plans did not comply with the board's regulations; where that material
deficiency was sufficient to justify the board's decision; and where, in
addition, the city's board of health did not give its unconditional ap-
proval to the subdivision plans. [483-486]

CIVIL ACTION commenced in the Land Court Department
on March 14, 1989.

The case was heard by *Robert V. Cauchon*, J.

*Edmund J. Brennan, Jr.*, for the defendant.

*Barbara A. Lenk* (*M. Frederick Pritzker* with her) for the
plaintiff.

GILLERMAN, J. After the plaintiff's definitive subdivision
plan was denied approval by the city of Taunton planning
board (the board), a judge of the Land Court, reviewing the
board's decision under the provisions of G. L. c. 41,
§ 81BB, concluded that the board had exceeded its author-
ity. A judgment was entered annulling the board's decision
and remanding the case to the board for further action "not
inconsistent with" the judge's decision. Because the judge's
decision left no basis for the board to withhold its approval of

the plan, the judgment undoubtedly should be taken to mean that the board, upon remand, would be required to issue its approval of the plaintiff's plan. In these circumstances, the judgment, notwithstanding the remand order, is sufficiently final to warrant our review. See *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 605 (1980) (lower court retained jurisdiction, but there was a final judgment because "nothing remains to be done but to place a § 81P endorsement on the plan in accordance with the judgment"). Compare *Roberts-Haverhill Assocs.* v. *City Council of Haverhill*, 2 Mass. App. Ct. 715, 719 (1974) (final decree annulled decision of the council and ordered further hearings). The board filed a timely notice of appeal from the judgment.

1. *Facts.* We draw the material facts from the judge's findings and from exhibits not in dispute. The plaintiff is a residential real estate development company which holds an option to purchase 138.76 acres of undeveloped farm land in a residentially zoned district of Taunton. The proposed subdivision would yield 154 single family house lots, each containing at least 25,000 square feet of land.

The board approved, with modifications, two preliminary subdivision plans submitted by the plaintiff, see G. L. c. 41, § 81S, one on December 17, 1987, and the other on May 19, 1988. As stated in art. II, § 205, of the board's rules and regulations, the purpose of the submission of preliminary plans is to "provide for the detailed review of the layout and features of the proposed subdivision by the board, and other city agencies and boards." This is consistent with G. L. c. 41, § 81M, as amended by St. 1969, c. 884, § 2, which provides, in part, that the "powers of a planning board . . . shall be exercised with due regard for . . . securing adequate provision for water, sewerage, drainage, underground utility services, fire, police, and other similar municipal equipment . . . necessary in a subdivision."

Fifteen copies of the plaintiff's preliminary plans were filed with the board in order to permit distribution to, and review and comments by, various city departments, including the board of health, the sewer department, the city engineer, the

482                                    32 Mass. App. Ct. 480

K. Hovnanian at Taunton, Inc. *v.* Planning Board of Taunton.

fire department, and the street department. Among the re-
view comments received by the board in response to the
plaintiff's preliminary plans was a letter dated March 29,
1988, from the superintendent of the sewer division of the
city's department of public works. The letter refers to the
fact that the preliminary plans reveal the plaintiff's intention
to tie into a sewage line that had been constructed in South
Walker Street, and that the plaintiff had been informed that
that line could not be utilized.[1] The letter concludes that the
"sanitary sewer problem is still an issue that has not been
resolved. `

A second letter to the board was from the Taunton board
of health, dated April 14, 1988. After referring to the same
problem of the absence of Dighton's permission to tie into
the South Walker Street sewage line, the board of health
concluded that it "cannot approve this subdivision until such
time as the question of waste water disposal for this project
has been decided and finalized." The plaintiff received a copy
of both letters.

The plaintiff submitted its proposed definitive subdivision
plan for approval on September 21, 1988. See G. L. c. 41,
§ 81U. The judge found that there was no significant change
from the second preliminary plan. On November 8, 1988, the
board was informed that the board of health "approves the
subdivision conditioned upon adequate . . . sewage services
[being] available to the site," and on November 14, 1988,
the acting city engineer wrote the board that — aside from
the outstanding issue of approvals from Dighton — there was
adequate capacity in the system to process the additional dis-
charge flow from the plaintiff's subdivision.

---

[1]The city of Taunton and the town of Dighton were parties to an agree-
ment dated January 3, 1979, under which Dighton was to construct a sani-
tary sewage system within the town and to dispose of its sewage through
the sewage collection and treatment works of Taunton. The resulting sys-
tem included a line that ran along South Walker Street, but the agreement
was silent as to whether a land owner, such as the plaintiff, could tie into
that line without the approval of the town of Dighton. As indicated in the
text, *infra,* that issue is the subject of a pending action brought by the
plaintiff in the Massachusetts courts.

On December 5, 1988, after the required public hearing on the plaintiff's definitive plan, see G. L. c. 41, § 81T, the board voted to disapprove the plan on the ground that "[t]his is not a viable subdivision — there is no evidence that sewer is available."[2] Thereafter, the plaintiff submitted a revised definitive subdivision plan, again showing the same tie-in to the South Walker Street line, and, after another public hearing on February 16, 1989, the board again voted to disapprove the plans because "[t]here is no sewer tie-in." (See note 2, *supra.*) The board made no reference to a letter it had received from the board of health dated February 9, 1989, stating that the "Board of Health approved the definitive subdivisions conditioned upon municipal . . . sewage [*sic*] to the site . . . and upon all of the issues relative to cellars and watertables and storm water runoff and roadway drainage being discharged to bordering vegetative wetlands or directly to the Three Mile River being specifically addressed by the Taunton Conservation Commission."[3]

2. *Discussion.* The board's principal argument is that the judge was wrong because the plaintiff's definitive plans were not in compliance with the board's regulations. We agree. General Laws c. 41, § 81Q, as inserted by St. 1953, c. 674, § 7, provides that the board's rules and regulations "shall set forth the requirements of the board with respect to . . . the installation of municipal services [in the subdivision] . . . to carry out the purposes of the subdivision control law as set forth in section eighty-one M." Section 81M, as amended by St. 1969, c. 884, § 2, provides that the subdivision control law, G. L. c. 41, §§ 81K to 81GG, was enacted to protect the safety, convenience, and welfare of the inhabitants of the

---

[2]The board cited additional reasons, but the only reason which remains a live issue in this case is that relating to the sewage tie-in.

[3]Despite this letter, the judge found that the board of health had "issued its approval of Hovnanian's Revised Definitive Subdivision Plan on February 9, 1989." The record appendix does not include any action or decision by the board of health on February 9, 1989, other than the letter of that date described in the text of this opinion. It is clear that the approval by the board of health was expressly conditioned upon a variety of material matters.

city or town accepting its provision, and that the powers of the board shall be exercised with due regard "for securing adequate provision for water, sewerage, drainage . . . and other requirements where necessary in a subdivision . . . ." The effect of these provisions is to require a planning board to adopt reasonable regulations designed to carry out the purposes of the subdivision control law, including provisions relating to any necessary sewer arrangements. See *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 332 (1962). Moreover, the required regulations may impose the reasonable obligation that an applicant show that it "has *perfected arrangements* which will make possible service of the subdivision by the usual utilities . . .," including sewer. *Rounds* v. *Water & Sewer Commrs. of Wilmington*, 347 Mass. 40, 46 (1964) (emphasis added).

Article II, § 201, of the Taunton board's rules and regulations provides that "[n]o subdivision plan shall be approved unless it . . . meets the requirements of public safety, including . . . sewerage disposal and drainage facilities." Section 211(2)(C) of art. II provides that, if the applicant proposes to interconnect with the Taunton municipal sewerage system, the definitive plan must be accompanied by (i) a statement by the supervisor of the sewer department "of the conditions on which the city will sewer the subdivision," and (ii) a statement of the supervisor approving the engineering features of the proposed sanitary sewers.[4] To the same effect is art. III, § 315(1), which provides that sanitary sewers shall be designed "to provide connection to municipal sewerage system, as approved by the sewer supervisor." These regulations are reasonable requirements designed to assure an adequate and proper sewerage system for the subdivision.

The plaintiff's definitive subdivision plans did not include any statement from the sewer department specifying the conditions on which the city would provide sewerage for the sub-

---

[4]It is undisputed that the engineering features of the subdivision plans relating to the sewerage system were satisfactory.

division.[5] Indeed, the plaintiff acknowledges that the right to tie into the South Walker Street line depends on the outcome of the pending litigation it commenced against the town of Dighton and others.

The plaintiff argues that the judge noted the failure of the plaintiff to provide the statements required by the regulation but that the judge was nevertheless correct in concluding that the adequacy of the plaintiff's proposed sewer tie-in is "best reserved for the board of health and building inspector at the time building permits are applied for, [and therefore] the board acted both unreasonably and prematurely . . . ."[6] The argument has no merit. On the facts of this case, the issue is not whether the board may require the issuance of a sewer permit before giving its approval to subdivision plans but whether the board may reasonably require that the plaintiff demonstrate that "perfected arrangements" have been made for the interconnection to the municipal sewer system shown on the subdivision plans. *Rounds* v. *Water & Sewer Commrs. of Wilmington, supra* at 46, held that the board may properly require such a demonstration. Because the plaintiff failed to provide the required statements from the sewer supervisor, and thereby demonstrate that all necessary arrangements were in place, the plans did not comply with the board's regulations; that material deficiency is sufficient to justify the decision of the board. See G. L. c. 41, § 81M, as amended by St. 1957, c. 265, which provides in part, "It

---

[5]The plaintiff provided a letter from the sewer department dated October 17, 1988, in which the superintendent acknowledged the city's obligation to maintain the South Walker Street line. This letter did not satisfy the plaintiff's obligations under the regulations with regard to the necessary sewer tie-in. By letter dated January 20, 1989, the plaintiff's counsel notified the board that suit had been brought to determine whether the South Walker Street line is "public" and to determine whether Dighton must grant the plaintiff permission to tie into the South Walker Street line. This, too, did not satisfy the requirement of the regulations.

[6]The judge relied on *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. 171, 185 (1977), but that case, insofar as it might tend to support the judge's decision, involved the action of the town's board of health implicating the State Sanitary Code, not the subdivision control law. See *id.* at 183-185.

is the intent of the subdivision control law that any subdivision plan filed with the planning board shall receive the approval of such board if said plan conforms to the recommendation of the board of health and to the reasonable rules and regulations of the planning board . . . ."

The board's decision was correct for a second reason. As described above, the city's board of health did not give its unconditional approval to the plaintiff's definitive subdivision plans. To the contrary, the board of health, by letters to the planning board dated November 8, 1988, and February 9, 1989, conditioned its approval upon the availability of the sewer tie-in and, in the February 9 letter, to "all of the issues relative to cellars and watertables and storm water runoff and roadway drainage . . . being specifically addressed by the Taunton Conservation Commission." See note 3, *supra.* Subdivision plans must comply with reasonable recommendations of the board of health. *United Reis Homes, Inc.* v. *Planning Bd. of Natick,* 359 Mass. 621, 623 (1971). *Independence Park, Inc.* v. *Board of Health of Barnstable,* 25 Mass. App. Ct. 133, 135 (1987). In the absence of the approval of the subdivision plans by the board of health, the planning board had no choice but to disapprove the plans because it could not resort to the alternative of modifying the plans to bring them into conformity with the recommendations of the board of health.[7] See *Loring Hills Developers Trust* v. *Planning Bd. of Salem,* 374 Mass. 343, 348 (1978). Because there was no such approval, see note 3, *supra,* we conclude that the board did not exceed its authority in disapproving the plaintiff's plans.

---

[7]There is also statutory authority for the planning board to issue its approval upon the condition that no building be erected without the consent of the board of health, but that authority is limited to those instances where the report of the board of health "require[s]" that arrangement. See G. L. c. 41, § 81U.

The judgment of the Land Court is reversed. A new judgment is to be entered that the decision of the city of Taunton planning board did not exceed its authority.

*So ordered.*