K. HOVNANIAN AT TAUNTON, INC. *vs*. CITY OF TAUNTON
& others.[1]

No. 93-P-465.

Bristol. April 14, 1994. - November 21, 1994.

Present: ARMSTRONG, DREBEN, & JACOBS, JJ.

*Municipal Corporations*, Sewers. *Sewer. Subdivision Control*, Municipal services. *Civil Rights*, Availability of remedy.

A Superior Court judge did not err in declaring that G. L. c. 83, § 3, was not applicable to an intermunicipal sewer system, where read separately, or in the context of the whole statutory scheme, that section could not reasonably be construed to apply to other than an independent sewer system established within the territory of a municipality; as a result, a property owner did not have a statutory right to a connection to the intermunicipal system. [643-644]

Contracts between two municipalities, executed under the authority of G. L. c. 83, § 1, and (before 1989) G. L. c. 40, § 4, did not contemplate additional sewer connections to their intermunicipal sewer system without the approval of the municipality through which the sewage would flow. [644-645]

A property owner did not demonstrate the existence of a right to have its property connected to an intermunicipal sewer system or to have its subdivision plan approved that would be the basis for a claim of denial of constitutional rights under G. L. c. 12, § 11I. [645-648]

CIVIL ACTION commenced in the Superior Court Department on November 4, 1988.

The case was tried before *John A. Tierney*, J.

*M. Frederick Pritzker* for the plaintiff.

*Kevin J. McAllister & Edmund J. Brennan, Jr.*, for city of Taunton & others.

*David T. Gay*, Town Counsel, for town of Dighton.

---

[1]The town of Dighton; the mayor of Taunton; the commissioner and assistant commissioner of the Taunton department of public works. Actions against five other original defendants, who are not parties to this appeal, were dismissed prior to trial.

JACOBS, J. The plaintiff Hovnanian, a real estate developer, filed a complaint in the Superior Court in 1988, principally asserting that the defendants improperly denied it a sewer connection permit for a one hundred and fifty-four unit single-family subdivision which it proposed to establish on the Taunton portion of a 138.76 acre tract of land,[2] a nine-acre segment of which is located in Dighton. In addition to declaratory relief, Hovnanian sought damages in a jury trial under G. L. c. 12, § 11I, for violation of its civil rights.

As determined by the judge in comprehensive and detailed findings following trial, the sewer line to which the plaintiff sought access is located in South Walker Street, a public way in Taunton, and was constructed in 1986 by another developer to serve a seventy-home development on the opposite side of South Walker Street from the plaintiff's proposed subdivision. The South Walker Street line has no direct connection to the Taunton sewer system. At its southerly terminus it ties into the Dighton sewer system which is connected, at another location, to the Taunton system and ultimately the Taunton wastewater treatment plant.

Two agreements govern the relationship between Taunton and Dighton with respect to their intermunicipal sewer system. One, dated January 3, 1979, allows Dighton to send sewage from its system through Taunton sewer lines to Taunton's wastewater treatment plant and provides for payment by Dighton for this accommodation. It also provides that either Taunton or Dighton may utilize any unused capacity in the Taunton treatment facility. The judge found that this agreement "did not contemplate or refer to sewage passing through the Dighton system where the sewage had originated in Taunton."

The second agreement between the municipalities is dated April 24, 1986, and incorporates an earlier agreement between the developer who constructed the South Walker Street line and the Dighton sewer commission. That earlier agreement, dated March 13, 1986, in addition to permitting

---

[2]At all pertinent times, Hovnanian held an option to purchase the land from the owner, Leonard Reed.

connection of the South Walker Street line into the Dighton sewer system, limited to seventy the number of subdivision homes which the contracting developer might connect to that line in Taunton and provided for a fee to be paid to Dighton for each connection. Fifty-four homes, including a few located outside of that development, were tied into the South Walker Street line as of the time of trial. The April 24, 1986, agreement "sets forth a system to measure and to credit Dighton for sewage which flows from Taunton into Dighton" and for its related operational costs.

In combination, the municipal agreements result in Dighton not incurring any net expense for its acceptance of sewage from Taunton, and being obliged to pay Taunton only for Dighton-generated sewage treated at Taunton's treatment plant. The agreements are silent as to Taunton's right to condition connections to the South Walker Street line on Dighton's approval or Dighton's right to veto such a connection or to refuse to accept sewage from that line.

When Hovnanian inquired about connecting its proposed subdivision into the South Walker Street line in Taunton, it was informed by Taunton officials that Dighton first would have to agree to accept sewage from that development before Taunton could issue the requisite connection and extension permits (see note 3, *infra*). The parties do not contest the judge's finding that "[n]o Taunton ordinance, by-law or regulation requires Taunton, before authorizing a sewer connection in Taunton to the South Walker Street Sewer Line, to ascertain that Dighton's approval has been obtained." Hovnanian thereafter sought and ultimately was refused Dighton's permission to connect into the intermunicipal sewer system in either Dighton or Taunton. The judge found that Dighton's decision "was not predicated upon concerns with the adequacy of physical capacity of the intermunicipal sewer system to service the [plaintiff's] development nor upon any potential developments in Dighton brought to its attention. Rather, it was based upon political considerations including the unpopularity of the development and the desire

to be responsive to a hostile public which vigorously opposed it."

At trial, there was testimony that certain Taunton officials, i.e., the defendant mayor, and one Herman Ferreira, a predecessor of the defendants commissioner and assistant commissioner (note 1, *supra*) and certain Dighton officials, had interfered with or attempted to interfere with Hovnanian's obtaining the requisite sewer permits. There was also testimony that the mayor told Hovnanian that given the public opposition to its development, he would instruct the Taunton city council to deny a sewer connection permit. Also, there was evidence of unsuccessful efforts on the part of Dighton to have Hovnanian donate land to the town in exchange for its approval of the sewer connection. There was also evidence that the Taunton planning board had rejected Hovnanian's application pursuant to G. L. c. 41, §§ 81K to 81GG, for approval of its subdivision plan and that a judge of the Land Court, in a separate action, had ruled that the planning board's decision exceeded its authority. The Land Court judgment was on appeal to this court at the time of trial and was later reversed in *K. Hovnanian at Taunton, Inc.* v. *Planning Bd. of Taunton*, 32 Mass. App. Ct. 480 (1992).

1. *The trial results.* After trial, the judge declared that G. L. c. 83, § 3, did not apply to the intermunicipal sewer system shared by Taunton and Dighton and that each municipality's permission was a necessary condition to the other's approval of Hovnanian's application for sewer connection and extension permits.[3] A jury found against both municipalities, the mayor, commissioner, and assistant commissioner on the civil rights claims and awarded Hovnanian damages

---

[3]In addition to the sewer connection issue, there is a parallel issue of the alleged refusal of Dighton and Taunton to sign an application for a sewer extension permit to the State division of water pollution control under G. L. c. 21, § 43(2). The intermunicipal agreements also are silent on such a permit. The judge found no relationship between this statute and G. L. c. 83, § 3. In any event, our decision makes unnecessary any resolution of this issue, since Dighton's proper disapproval of the sewer connection renders moot any question relating to the extension permit.

in the amount of $500,000.[4] Following the jury verdict, the judge allowed the motions of Dighton, and the commissioners for judgment notwithstanding the verdict and denied similar motions by Taunton and the mayor. Hovnanian appealed from the ensuing declaratory judgment, and Taunton and the mayor cross-appealed from the civil rights judgment which was entered on the jury's verdict.[5] Dighton filed a cross-appeal from the judge's denial of its motion for a new trial that was filed together with its motion for judgment notwithstanding the verdict.[6]

2. *Declaratory relief.* Hovnanian argues that the judge erred by declaring that G. L. c. 83, § 3, does not apply to an intermunicipal system such as that here in issue. The pertinent part of that statute states: "if the owner of . . . land shall make to the board or officer having charge of . . . sewers application to connect his land with a common sewer, such board or officer shall make such connection." This provision has been construed as establishing a "present legal right" to a connection so long as the resulting added sewage does not pose an immediate risk of overloading the existing system. *Clark* v. *Board of Water & Sewer Commrs. of Norwood,* 353 Mass. 708, 710-711 (1968). Neither Dighton nor Taunton contends that the connection sought by Hovnanian would overload their sewage systems.

Whether read separately or in the context of the over-all statutory scheme, § 3 reasonably cannot be construed to apply to other than an independent sewer system established

---

[4] The jury, by special verdict, found that the defendants interfered in bad faith with secured rights of Hovnanian by threats, intimidation, or coercion. They also found for the mayor on counts alleging interference with Hovnanian's contractual and advantageous relations with the owner of the land in question. No appeal is taken from that part of the judgment based on those verdicts.

[5] The judge, on separate findings and rulings, included costs and attorneys' fees in the amount of $199,682.67, in the judgment against Taunton and the mayor.

[6] Dighton's appeal was conditioned on the judgment notwithstanding the verdict, which was entered in its favor, being reversed or vacated on appeal.

within the territory of a municipality.[7] See the first sentence of G. L. c. 83, § 1, as appearing in St. 1964, c. 736, § 2 ("A city . . . may lay out, construct, maintain and operate a system or systems of common sewers . . . for a part or the whole of its territory . . ."). There is, however, statutory authority for municipalities to contract with one another to deal with sewage disposal.[8] Accordingly, we direct our analysis to the agreements between Taunton and Dighton. While silent as to Taunton's obligation to condition additional connections to the South Walker Street line on Dighton's approval or Dighton's right to veto that connection, those agreements nevertheless implicitly and logically give rise to that obligation and right.

---

[7]General Laws c. 83, § 3, provides:

"The board or officers of a city or town having charge of the repair and maintenance of sewers may, upon request of the owner of land and payment by him of the actual cost thereof, construct a particular sewer from the street line to a house or building. A town may appropriate money for connecting estates within its limits with common sewers, and no estate shall, in any year in which such an appropriation is made, be connected with a common sewer except in the manner hereinafter provided. If bonds or notes are issued to pay the cost of making such connections, the assessments provided for in section twenty-four shall be applied to the payment of such bonds or notes. If the board of health of a town making such appropriation shall order land abutting upon a public or private way in which a common sewer has been laid to be connected with such sewer, or if the owner of such land shall make to the board or officer having charge of the maintenance and repair of sewers application to connect his land with a common sewer, such board or officer shall make such connection."

[8]The pertinent provisions of two relevant statutes are:

"A city [if locally authorized] may make contracts with . . . any other city [or] town . . . with regard to the operation, repair and maintenance of the physical properties of its system or systems of sewers. . . ." G. L. c. 83, § 1, as amended through St. 1992, c. 343, § 3.

Prior to St. 1989, c. 687, § 7, G. L. c. 40, § 4, second par., provided: "[A city may contract] [f]or the construction of sewers, sewerage systems, and sewage treatment and disposal facilities, for making connections, thereto, and for the collection, treatment, and disposal of sewage, with one or more other governmental units. . . ."

The judge correctly concluded that the 1979 agreement "did not contemplate or refer to sewage passing through the Dighton system where the sewage had originated in Taunton." Its focus is the provision of treatment capacity in Taunton for sewage originating in Dighton. Conversely, the 1986 agreement between the municipalities recognizes, in effect, the existence of a limited right of Taunton akin to an equitable easement, see *Baseball Pub. Co.* v. *Bruton*, 302 Mass. 54, 58 (1938), to deposit sewage into the Dighton sewage system. That agreement, by its specific preamble clauses, indicates that the homes benefiting from its provisions are those alluded to in the related agreement between Taunton and the developer who constructed the South Walker Street line. The latter agreement expressly limits the number of homes to be tied into that line to seventy.

To allow the general provisions of G. L. c. 83, § 3, to operate so as to override the specific limitations of the 1986 agreements, would encroach on the jurisdiction of Dighton by permitting the residual capacity of sewage lines owned and maintained by it to be reduced not by development within its borders, but by connections located in and authorized by Taunton. That Taunton, through the 1979 agreement, has theoretically exposed itself to reduction of its unused line capacity by sewage flow resulting from additional development within Dighton, does not, in the absence of express agreement, make true the converse.[9] Dighton has not bargained away its right to refuse sewage from Taunton, except for that generated by the seventy homes originally expected to tie into the South Walker Street line.

---

[9] We intimate no opinion as to the mutual susceptibility to developmental limitations which theoretically may arise from fully integrated municipal sewage systems, or as to whether a municipality, without express reservation, retains the right to veto a tie-in within a municipality with which it shares a fully integrated sewage system. We note that the 1979 agreement anticipates that additional development in Dighton may result in flow rates specified in the agreement being exceeded and provides that in such an event "the parties will jointly plan, finance and construct additional sewers, pumping stations, and all other necessary works to enable the sewage flows from Dighton to be conveyed to [Taunton's] sewage treatment facilities."

3. *The civil rights relief.* Central to proof of a violation of G. L. c. 12, § 11I,[10] is the existence of a right secured by "the Constitution or laws of either the United States or of the Commonwealth." *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 717 (1989). See also *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. 621, 626 (1989). Hovnanian, in its complaint, alleges unlawful interference with its "constitutionally protected property rights" and unconstitutional deprivation of property without due process. In its reply brief, Hovnanian bases its claim upon "a fundamental constitutional right to use its property lawfully" relying on recognized constitutional "guaranties [that] include the right to own land and to use and improve it according to the owner's conceptions of pleasure, comfort or profit. . . ." *Brett* v. *Building Commr. of Brookline*, 250 Mass. 73, 77 (1924). At trial, however, Hovnanian focused its claims not upon an interference with any general right to use of its property, but upon the deprivation by the defendants of its claimed right to tie into the South Walker Street line and to the approval of its subdivision plan by the Taunton planning board. Contrast *Bell* v. *Mazza*, 394 Mass. 176 (1985). That narrow focus fails to implicate any remedy provided under G. L. c. 12, § 11I.

As determined by the judge, and affirmed by us, Hovnanian did not have a statutory right to connect into the South Walker Street line. It also had no constitutional right to the favorable exercise of municipal discretion with respect to that tie-in.[11]

---

[10]General Laws c. 12, § 11I, inserted by St. 1979, c. 801, § 1, provides in pertinent part:

"Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with [by threats, intimidation or coercion] may institute . . . a civil action for . . . compensatory money damages."

[11]Even if, contrary to our belief, Hovnanian's interest in a sewer tie-in was related to a constitutionally secured right to use of the property in question, see *Bell* v. *Mazza*, *supra* at 182, remedial rights under G. L. c. 12, § 11I, nevertheless, may not be involved. The Supreme Judicial

Had Hovnanian asserted a specific property interest under State law,[12] any arbitrary misapplication of that law reflected by the denial of the tie-in nevertheless does not involve procedural or substantive due process rights. *Rosenfeld v. Board of Health of Chilmark, supra* at 627-628. "[T]he ordinary state administrative proceeding involving land use or zoning does not present [a violation of a Federal constitutional right], regardless of how disappointed the license or privilege seeker may feel at being . . . turned down." *Id.* at 628, quoting from *Creative Envts., Inc.* v. *Estabrook,* 680 F.2d 822, 832 n.9 (1st Cir 1981), cert denied, 459 U.S. 989 (1982). See Bobrowski, Massachusetts Land Use & Planning Law § 2.6.1, at 77 (1993 & Supp. 1994)("The *Creative Environments* holding has led, in the First Circuit, to a long line of land use decisions rejecting the use of § 1983 actions.")[13] Moreover, we are not involved here with corrupt or egregious conduct that so shocks the conscience as to give rise to a due process claim. See *Raskiewicz* v. *Town of New Boston,* 754 F.2d 38, 44 (1st Cir.), cert denied, 474 U.S. 845 (1985); *Rosenfeld* v. *Board of Health of Chilmark, supra* at 628.

Hovnanian's claim of a right to approval of its subdivision plan is similarly unavailing. This court held in *K. Hovnanian*

---

Court has concluded "that the Legislature intended to provide a remedy under G. L. c. 12, § 11I, coextensive with 42 U.S.C. § 1983 (Supp. V 1981)." *Id.* at 181. *Redgrave* v. *Boston Symphony Orchestra, Inc.,* 399 Mass. 93, 98 (1987). Not directly involved here is the recognized distinction "that the Federal statute requires State action whereas its State counterpart does not." *Batchelder* v. *Allied Stores Corp.,* 393 Mass. 819, 822-823 (1985). We, therefore, are guided by decisions interpreting the Federal statute which have recognized that when broad discretion is accorded to a governmental body, as here, where both Taunton and Dighton have virtually unbounded discretion to permit the tie-in in question, the likelihood of the existence of a property interest in that tie-in is greatly diminished. *Rosenfeld* v. *Board of Health of Chilmark,* 27 Mass. App. Ct. at 627.

[12]Other than its claims under G. L. c. 83, § 3, and G. L. c. 41, §§ 81K to 81GG, Hovnanian does not assert violation of any right secured by any other laws of the Commonwealth. We, therefore, do not go beyond considering violation of constitutional rights. See *Bell* v. *Mazza,* 394 Mass. at 181 n.7.

[13]This commentator notes that the First Circuit line of decisions is not followed in the other Federal circuits. See *id.* § 2.6.1 at 77 n.16.

*at Taunton, Inc.* v. *Planning Bd. of Taunton*, 32 Mass. App. Ct. at 485-486, that the decision of the Taunton planning board to reject Hovnanian's subdivision plan was correct given the failure of the plan to comply with the board's regulations and the absence of approval by the Taunton board of health based upon the unavailability of a sewer tie-in. It is significant that with respect to the absence of the Taunton board of health approval, this court, in effect, indicated that administrative discretion was not involved. We concluded that "the planning board had no choice but to disapprove the plans. . . ." *Id.* at 486. In any event, no "property" interest is involved in the approval of a subdivision plan. *Cote* v. *Seaman*, 625 F.2d 1, 2 (1st Cir. 1980). *Rosenfeld* v. *Board of Health of Chilmark*, *supra* at 627. The existence of such an interest is "a necessary prerequisite to a fourteenth amendment due process claim." *Cote* v. *Seaman*, *supra* at 2.

We find no merit in Hovnanian's claim of denial of the constitutional right of equal protection and in light of our decision there is no need to address other issues argued by the defendants relating to evidentiary matters, immunity, standards for attorneys' fees and the definition of "person" under G. L. c. 12, §§ 11H & 11I.

4. *Conclusion.* Accordingly, the declaratory relief portion of the judgment is affirmed.[14] The portion of the judgment with respect to Hovnanian's civil rights claims against the city of Taunton and the mayor is reversed.[15] No action is necessary with respect to the appeals from the decisions re-

---

[14]Since separate argument was not made to us, we intimate no opinion with respect to that part of the declaratory judgment stating that "Taunton's permission is necessary as a condition of Dighton's approval of Hovnanian's application for sewer connection and extension permits where the contemplated tie-in is to occur in Dighton," insofar as it might be construed as applying to development of the nine-acre Dighton portion of the land under option.

[15]Accordingly, Hovnanian is not entitled to the award of attorneys' fees. See note 5, *supra*; *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 819 n.13 (1991).

lating to the posttrial motions of Hovnanian, Dighton, and the Taunton commissioner and assistant commissioner.

*So ordered*