ALBERT TORTORA & another[1] *vs.* INSPECTOR OF BUILDINGS OF
TEWKSBURY.[2]

No. 95-P-528.

Middlesex. February 20, 1996. - August 15, 1996.

Present: KASS, GREENBERG, & FLANNERY, JJ.

*Civil Rights,* Availability of remedy, Coercion. *Municipal Corporations,*
Building inspection.

In an action brought under G. L. c. 12, §§ 11H and 11I, against a town's
inspector of buildings, plaintiffs produced sufficient evidence on the
defendants' motion for summary judgment that the defendants in their
official capacities sought, by "threats, intimidation and coercion," to
cause the plaintiffs to cease attempts to pursue lawful avenues to use
and enjoy their property: the judge should have denied the defendants'
motion. [122-124]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 1, 1992.

The case was heard by *Thayer Fremont-Smith,* J., on a mo-
tion for summary judgment.

*Ian W. Moores* for the plaintiffs.

*Stephen C. Pfaff* for the defendants.

GREENBERG, J. The plaintiffs, as husband and wife, owned
a single-family home on 15 Mill Street in the town of Tewks-
bury. On May 1, 1992, they brought an action against the
defendants alleging civil rights violations under G. L. c. 12,
§§ 11H and 11I. Both sides cranked up discovery mechanisms
under Mass.R.Civ.P. 30, 365 Mass. 780 (1974). Nearly three
years later, in January, 1995, summary judgment entered in
favor of the defendants. This appeal followed.

From the parties' materials that properly pertain to the
motion for summary judgment, the following undisputed facts

---

[1]Michelle Tortora.

[2]George Nawn, John McCarthy and Thomas Monahan.

appear.[3] In 1987, the plaintiffs obtained a building permit to build an addition and an additional garage onto their house in Tewksbury, but had failed to complete the project more than two years later. In May, 1989, the Tewksbury building inspector (defendant George Nawn) issued an oral cease and desist order to the plaintiffs, although he did not send them a violation notice. Nawn also sent the plaintiffs a memorandum requiring that they (1) submit a new application for a building permit, (2) have their architect meet with inspectors on site, (3) remove unregistered vehicles and debris from their lot, (4) double up the roof rafters, and (5) jog down the roof line if it was too high. In July, 1989, the defendants caused the addition and the existing house to be posted with a notice that they were unsafe, although both notices were intended to apply only to the addition and plaintiff Michelle Tortora was so informed.[4]

The plaintiffs also produced evidence (denied by the defendants) that Michelle Tortora saw the defendants at the plaintiffs' property on numerous occasions, that the defendants made disparaging comments about the plaintiffs' dogs and cars and accused the plaintiffs of violating the cease and desist order without cause, that the defendants Nawn or Monahan, or both, threatened Albert Tortora, an auto mechanic, with immediate arrest "on the spot" if Tortora so much as did an oil change or any automotive work on the property, or if the plaintiffs ever put a nail into the property. There also was evidence that the defendants Nawn or Monahan, or both, had told the plaintiffs never to apply for another permit in the town because he would ensure that they did not get it, and he threatened to have their building permit revoked and to have the board of health at the plaintiffs' property, and stated that he always would be watching the plaintiffs.

---

[3]In examining the materials we have disregarded the assertions in the complaint since the complaint has not been verified, except insofar as the assertions constitute judicial admissions by either plaintiff. See Liacos, Massachusetts Evidence § 2.4.2 (6th ed. 1994). The affidavits and transcripts of depositions provide the basic materials on which the motion is to be decided.

[4]The notice on the existing house was posted to alert anyone going into the addition from that direction. It subsequently was removed. The plaintiffs do not challenge the defendants' authority to issue (or even to enforce) the cease and desist order, nor do they assert that order was invalid. They also do not challenge the posting of the addition (or the presumably mistaken posting of the house, for that matter) as unsafe.

*Discussion.* The key question is whether, on the record before the court, the plaintiffs have shown, to a degree sufficient to establish a genuine issue of material fact, a colorable claim of interference with a constitutional right. *K. Hovnanian at Taunton, Inc.* v. *Taunton,* 37 Mass. App. Ct. 639, 646 (1994). See *Bally* v. *Northeastern Univ.,* 403 Mass. 713, 717-720 (1989).

We believe that the gist of the complaint is that the defendant inspectors interfered with the plaintiffs' rights to use *and enjoy* their property. The motion judge, however, allowed the defendants' motion for summary judgment on the ground that the record was devoid of any evidence upon which a jury could find that the plaintiffs were deprived of any rights to use their property in a legal manner by threats, intimidation, or coercion by the defendants.

On appeal, as they apparently did below, the plaintiffs focus mostly upon their claimed right *to improve* their property. On the facts presented (so far as appears), the defendants legitimately issued a cease and desist order regarding the plaintiffs' construction. As a result, the plaintiffs' argument misses the mark. Compare *K. Hovnanian at Taunton, Inc.* v. *Taunton,* 37 Mass. App. Ct. at 646, where in an analogous situation, we concluded that a plaintiff's narrow focus (the alleged right to tie into a specific sewer line and approval of a subdivision plan) did not constitute a claim of interference with any general right to use its property[5]; *Murphy* v. *Duxbury,* 40 Mass. App. Ct. 513, 518 (1995) (adverse administrative action, at least not part of a scheme of harassment, does not amount to "threats, intimidation, or coercion").

The real thrust of the plaintiffs' claim, however, seems not to be that the defendants prevented the plaintiffs from completing their addition (which the plaintiffs themselves had not been able to do for two years), but rather stems from the threats made *afterwards.* Compare *Swanset Dev. Corp.* v. *Taunton,* 423 Mass. 390, 395-396 (1996). As to this, there was probative evidence on the summary judgment record to

---

[5]Unlike the present case, however, the result in *K. Hovnanian* was reached after a trial, and the court also noted that there was no "corrupt or egregious conduct that so shocks the conscience as to give rise to a due process claim." 37 Mass. App. Ct. at 647. Here, as discussed below, there are threats of immediate arrest without even issuance of a violation or an application for a criminal complaint.

the effect that the defendants interfered with the plaintiffs' right to live a normal life at their home by overzealous "inspections" and improper threats of arrest. As to legitimate exercises of authority, compare *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. 621, 626-628 (1989); *Smith* v. *Longmeadow*, 29 Mass. App. Ct. 599, 603 (1990); *Silvia* v. *Building Inspector of W. Bridgewater*, 35 Mass. App. Ct. 451, 455 (1993) (even if ill-advised).[6] Here, however, there were threats of retributive arrest or official action for lawful conduct such as putting a nail in the building or applying for a permit in the town. By "threats, intimidation and coercion" the defendants in their official capacities sought to cause the plaintiffs to cease attempts to pursue lawful avenues to use and enlarge their property. See *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 823 (1985).[7] The defendants threatened arrest without having sought a criminal complaint and without notice as required under G. L. c. 143, § 51. See *Commonwealth* v. *Porrazzo*, 25 Mass. App. Ct. 169, 176-178 (1987); *Commonwealth* v. *Duda*, 33 Mass. App. Ct. 922, 922-923 (1992). On this point, the plaintiffs have presented enough support for them to avert summary judgment against them. Contrast *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. 771, 781 (1987); *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence*, 403 Mass. 531, 559 (1988).

Accordingly, we remand for a trial to determine whether the defendants crossed the line from legitimate exercise of their authority to illegal harassment or impairment of

[6]Federal cases concerning unsuccessful claims pursuant to 42 U.S.C. § 1983, alleging harm by denial of a permit which should have issued, are inapposite. See *Creative Envts., Inc.* v. *Estabrook*, 680 F.2d 822, 831-832 & n.9 (1st Cir. 1981), cert. denied, 459 U.S. 989 (1982); *Chiplin Enterprises, Inc.* v. *Lebanon*, 712 F.2d 1524, 1527 (1st Cir. 1983).

[7]The threats of arrest would appear to satisfy any requirement (if such there is) that there be "a physical confrontation accompanied by a threat of harm." See *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 719-720 (1989), and cases cited. See also *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. 771, 781 (1987) (threats or arrest or physical eviction); *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. 548, 566 n.18, cert. denied, 116 S. Ct. 337 (1995)(Supreme Judicial Court assumed, without deciding, that certain forms of oppression or domination not involving physical force might constitute coercion under the State Civil Rights Act). Compare *Swanset Dev. Corp.* v. *Taunton*, 423 Mass. 390, 395-397 (1996).

the plaintiffs' right to use and enjoy their property. We do not intimate, of course, any view about what facts will ultimately emerge during the course of the trial.

The judgment for the defendants is reversed, and the matter is remanded to the Superior Court for trial on the merits of the claims under G. L. c. 12, §§ 11H and 11I.

*So ordered.*