## Massachusetts Broken Stone Company vs. Planning Board of Weston.

No. 97-P-2054.

Suffolk. May 12, 1998. - November 16, 1998.

Present: Armstrong, Perretta, & Spina, JJ.

*Evidence,* Burden of going forward. *Practice, Civil,* Burden of proof, Failure to prosecute. *Subdivision Control,* Decision of planning board, Planning board, Plan, Drainage, Streets, Board of health.

A judge of the Land Court did not abuse his discretion in denying a planning board's motion to dismiss for lack of prosecution a complaint filed under G. L. c. 41, § 81BB, on which neither party had acted for over six years. [740-741]

A planning board's disapproval of a definitive subdivision plan based on the potential of the proposed drainage design to adversely affect water quality was beyond the scope of the board's authority under its rules and regulations, and a judge of the Land Court correctly granted summary judgment in favor of the developer of the property. [741-742]

A judge of the Land Court correctly concluded that a developer's failure to provide to a planning board engineering details for the projection of a dead-end street shown on a definitive subdivision plan could not provide a basis for the board's disapproval of the plan, where there was no requirement in the circumstances to submit such engineering details. [742-743]

A planning board could not disapprove a definitive subdivision plan for its proposed sewage disposal method, which was an approved method under the board's rules and regulations. [743-744]

Any action, inaction, or recommendation of a board of health with respect to a proposed definitive subdivision plan did not, in the circumstances, provide a basis for a planning board to disapprove the plan. [744-747]

Civil action commenced in the Land Court Department on March 5, 1990.

The case was heard by *Peter M. Lauriat,* J., sitting under statutory authority, on motions for summary judgment.

*Judith C. Cutler* for the defendant.

*Franklin C. Huntington, IV (John J. Griffin, Jr.,* with him) for the plaintiff.

SPINA, J. Massachusetts Broken Stone Company (Broken Stone) filed an appeal in the Land Court, under G. L. c. 41, § 81BB, from a decision of the planning board of Weston (planning board) disapproving its subdivision plan on grounds that the proposed development might adversely affect ground water, the plan failed to provide certain engineering details, the plan called for on-site sewage disposal systems, and it did not meet conditions in the report of the board of health. A Land Court judge rejected the planning board's reasons for disapproving the plan and granted summary judgment for Broken Stone. He also denied the planning board's motion to dismiss for failure to prosecute. The case is before us on the planning board's appeal from the judgment of the Land Court. We affirm.

Broken Stone is the owner of a seventy-four acre parcel of land in Weston (the site). On April 28, 1989, Broken Stone submitted a preliminary subdivision plan for a five-lot office complex on the site. On June 6, 1989, Broken Stone's preliminary subdivision plan was disapproved by the planning board. Broken Stone submitted a definitive subdivision plan for the site within seven months of the preliminary plan. That plan also was disapproved.

On March 5, 1990, Broken Stone appealed the board's disapproval of its definitive subdivision plan to the Land Court, pursuant to G. L. c. 41, § 81BB. The appeal lay dormant until May 15, 1996,[1] when Broken Stone issued deposition notices to the members of the planning board. On May 17, 1996, the board responded with a motion to dismiss Broken Stone's complaint for lack of prosecution, pursuant to Mass.R.Civ.P. 41(b)(2).[2] On June 3, 1996, Broken Stone moved for summary judgment on grounds that the disapproval of its definitive subdivision plan had no basis in fact or law.

The judge denied the planning board's motion to dismiss Broken Stone's complaint for lack of prosecution. He found that both parties had contributed equally to the delays in this case and that, while both parties had an equal opportunity to move the case forward, neither had done so. The judge noted that Broken Stone's inaction did not preclude the board from

[1]The planning board had been represented by counsel other than current appellate counsel until May 9, 1996.

[2]The planning board also filed a motion for a protective order to prevent Broken Stone from deposing the members of the board. This motion was allowed without prejudice.

seeking closure of the case and that its failure to do so supported denial of the motion to dismiss.

The judge allowed in part Broken Stone's motion for summary judgment, but denied it in part because of unresolved factual issues. The parties then filed a stipulation of facts and cross motions for summary judgment as to the remaining issues. On September 18, 1997, the judge allowed Broken Stone's motion for summary judgment as to the remaining issues, and denied the planning board's cross motion for summary judgment. The planning board brings the present appeal.

1. *Motion to dismiss.* The planning board first argues that the judge abused his discretion when he failed to dismiss Broken Stone's complaint for lack of prosecution. It asserts that the judge erroneously shifted the burden of moving this case forward to the planning board, and that Broken Stone offered no reasonable grounds for its failure to pursue its appeal in a timely manner. The planning board also asserts that the judge did not give sufficient consideration to the prejudice that it would suffer if its motion to dismiss were denied.

Massachusetts Rule of Civil Procedure 41(b)(2), 365 Mass. 804 (1974), provides, in pertinent part, "On motion of the defendant, with notice, the court may, in its discretion, dismiss any action for failure of the plaintiff to prosecute or to comply with these rules or any order of court." Trial on the merits of a plaintiff's claim is strongly favored, and the involuntary dismissal of such a claim should be reserved for those situations where a severe sanction is necessary. *Monahan* v. *Washburn*, 400 Mass. 126, 128-129 (1987). "As a minimal requirement, there must be convincing evidence of unreasonable conduct or delay. A judge should also give sufficient consideration to the prejudice that the movant would incur if the motion were denied, and whether there are more suitable, alternative penalties." *Ibid.* Only in rare instances will a trial judge deciding a rule 41(b)(2) motion have committed an abuse of discretion which amounts to an error of law. *Bucchiere* v. *New England Tel. & Tel. Co.*, 396 Mass. 639, 641 (1986). Such an abuse of discretion occurs when the judge's decision is arbitrary, capricious, whimsical or idiosyncratic. *Ibid.* See *Hoch* v. *Gavan*, 25 Mass. App. Ct. 550, 552 (1988); *Dewing* v. *J.B. Driscoll Ins. Agency*, 30 Mass. App. Ct. 467, 470-471 (1991).

The planning board's interpretation of the judge's decision as having shifted the burden of prosecuting the action to its

shoulders is unjustified. The judge correctly stated the law, including the need to examine the prejudice that might befall the moving party if the action were not dismissed. One indication of actual prejudice is the extent to which the moving party has been pressing for trial. Compare *Commonwealth* v. *Beckett*, 373 Mass. 329, 333-334 (1977). We think that the judge's consideration of the planning board's own failure to advance the action, especially in the absence of any affidavit supporting the existence of actual prejudice, was not a reallocation of any burden, but rather an implicit finding of no prejudice.

A judge *may* dismiss a case for lack of prosecution when, as here, over six years have elapsed since the commencement of the action and the plaintiff has failed to initiate any form of affirmative prosecutorial activity. See *Bucchiere* v. *New England Tel. & Tel. Co.*, 396 Mass. at 642. That result, however, is not compelled. We are mindful that the Land Court did not exercise administrative authority under its Standing Order No. 2-88 to schedule a pretrial conference or a trial, and that there was evidence that the planning board and Broken Stone had discussed alternative development strategies, all of which may have contributed to the delay. Broken Stone's "inaction" was deliberate, based on the mistaken belief that, pursuant to G. L. c. 40A, § 6, the pendency of its appeal froze the zoning on the site for subsequent development plans submitted for review before resolution of the appeal.[3] While not a commendable position, neither was it inexcusable. Though this is a close question, we cannot say that the judge abused his discretion by denying the planning board's motion to dismiss.

2. *Drainage design.* The planning board found that Broken Stone's storm drainage system, which proposed the diversion of run-off "*directly* into the two quarries and wetlands[,] is not appropriate for reasons as cited in the correspondence from the Cambridge Water Board, the Charles River Watershed, and the Report by Whitman and Howard completed for the Planning Board." Also, the parties stipulated that "the Planning Board's decision . . . [was] . . . based upon potential negative water quality impacts resulting from the proposed drainage design . . . [and] . . . was not based upon a determination that the proposed drainage design capacity is inadequate to handle the anticipated quantity of run-off to be generated on the Site."

When reviewing a planning board's disapproval of a defini-

[3]See our decision in *Massachusetts Broken Stone Co.* v. *Weston, post* 748 (1998).

tive subdivision plan, both the Land Court and the appellate courts are "confined to the reasons for disapproval of the subdivision plan stated by the planning board." *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 307 (1976). See *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 173 (1977). The question on appeal is whether the reasons stated by the planning board in rejecting the proposed drainage system, namely, the potential negative impacts on water quality, were within the scope of its authority under its rules and regulations.

Neither section 4.18 nor section 5.9 of the rules and regulations, upon which the planning board relies, pertains to water quality. Rather, together they call for the design of a particular type of drainage system (which Broken Stone failed to use), measured against accepted engineering principles, and having adequate capacity to divert run-off from the site. In view of the parties' stipulation that the board's decision was not based upon those concepts or those particular rules and regulations, they may not be used as a basis to disapprove the subdivision plan. *Canter, supra. Fairbairn, supra.* The Land Court judge correctly concluded that, where a subdivision's impact on water quality was not a matter for consideration under the rules and regulations of the planning board, such impact could not provide the basis for disapproval of the plan. See *Beale* v. *Planning Bd. of Rockland*, 423 Mass. 690, 696 (1996). Compare *Daley Constr. Co.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 155 (1959).

3. *Street design.* The planning board assigns error to the judge's ruling that Broken Stone's failure to provide engineering details for the projection of a dead-end street shown on the definitive plan could not provide a basis for disapproval of the plan.

It is undisputed that no engineering details of the projection were provided. This is so, the judge found, because the projection was never intended to be a street. That is, it was not a planned street.[4] The planning board argues that its rules and regulations make no distinction between streets and projections of streets, and that engineering details are required for both.

---

[4] The judge found that the projection "extends from the cul-de-sac to the northwest boundary of the site, where the property drops steeply fifty feet to a set of MBTA railroad tracks."

The sections of the rules and regulations upon which the board relies, 3.5, 3.12, 3.15 and 3.16, pertain to streets within the bounds of the subdivision which the subdivider plans or intends to construct, to existing or proposed streets on adjoining property leading to the boundary of the subdivision in anticipation of coordinated development (often referred to as "stub streets"), and to such stub streets as the board may require the subdivider to include in the subdivision to coordinate its development with the likely development of unsubdivided adjoining land. However, none of those circumstances exists here.

As the judge found, Broken Stone never intended to build the projection. The adjoining land had no stub street to which the projection could connect; and the planning board had never made the predicate finding, required by its rules and regulations, section 3.5, second par., that the adjoining land was unsubdivided and "suitable for eventual development," before it could require Broken Stone to provide engineering details for the projection of the proposed dead-end street to the boundary of the adjoining land. Under these circumstances, there was no requirement that Broken Stone submit engineering details for that projection, and its failure to do so could not provide the basis for disapproval of the plan. The judge did not err in so ruling. *Canter* v. *Planning Bd. of Westborough,* 4 Mass. App. Ct. at 307-308.

Neither can the planning board rely on section 1.1 of its rules and regulations, which prohibits dead-end streets except in unusual circumstances. It never cited that section as a basis for disapproval, and it may not do so now. *Canter, supra* at 307. *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. at 173.

4. *Ground water test information.* The planning board contends that the judge erred by rejecting as a viable basis for disapproving the subdivision plan its finding that "the proposed method of disposal of sewage by on-site systems is in conflict with the requirements of the Weston Board of Health."

The planning board relies upon section 3.14(e) of its rules and regulations, which requires percolation and ground water tests to be conducted in the presence of an agent of the board of health. While it is undisputed that the ground water testing was

not witnessed,[5] as required, the planning board did not disapprove the subdivision plan for that reason. Instead, it disapproved the plan based on the "proposed *method* of disposal . . . by on-site systems . . ." (emphasis added). A planning board may not rely upon unstated reasons, even if valid, to support its disapproval of a subdivision plan. *Canter, supra. Fairbairn, supra.* It is not surprising that the board does not attempt to justify its disapproval based upon its stated reason, i.e., the *method* of sewage disposal selected by Broken Stone. That method, an on-site leaching system, is an approved method of sewage disposal under section 3.14.

Where the board's own rules and regulations permit the disposal method selected by the subdivider, the board may not fault the subdivider for having selected that method. One of the underlying principles of the subdivision control law is that a planning board's rules and regulations be "comprehensive, reasonably definite, and carefully drafted, so that owners may know in advance what is or may be required of them and what standards and procedures will be applied to them." *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. 329, 334 (1962). *North Landers Corp.* v. *Planning Bd. of Falmouth,* 382 Mass. 432, 439 (1981). There was no error.

5. *Recommendations of the board of health.* The planning board revisits its reason for disapproval discussed in part 4 above, but relying on a different argument. The stated reason, again, was that "the proposed method of disposal of sewage by on-site systems is in conflict with the requirements of the Weston Board of Health." The planning board contends that its disapproval was based upon the recommendation of the board of health, apart from its own rules and regulations.

"A planning board may not approve a subdivision plan which does not comply with the recommendation of the board of health; the planning board's options in such a case are limited

[5]In letters to the planning board that were incorporated in the parties' stipulation of facts and exhibits, Broken Stone asserted that its percolation tests had been witnessed as required, and that only the ground water tests had not been witnessed. In its brief, the planning board misquotes one of the documents, to suggest that neither the percolation tests nor the groundwater tests had been witnessed. This mischaracterization, without more, is not sufficient to create a disputed fact. Nevertheless, the planning board's error is of no consequence, as it is undisputed that the ground water tests were not witnessed, and our disposition of this case requires board of health approval before any building can take place on the site.

to those of disapproving the plan or modifying it in such fashion as to bring it into conformity with the recommendation of the board of health." *Loring Hills Developers Trust* v. *Planning Bd. of Salem*, 374 Mass. 343, 348 (1978), quoting from *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. at 173-174. "Under § 81U, if the plan 'does not comply with . . . the recommendations of the health board,' the planning board 'shall modify and approve or shall disapprove such plan.' Cf. § 81M." *Loring Hills Developers Trust, supra* at 348.

The board of health approved the subdivision on three conditions[6]: (1) that soil tests supporting the viability of an on-site leaching system be witnessed by an agent of the board of health; (2) that a connection to an available municipal sewer line be made, if available (here, there was an available connection to the Waltham sewer system); and (3) that prior to any construction, evidence be submitted demonstrating that neither the ground water nor the soil contained chemical contaminants inimical to human health.

The first condition set by the board of health, that "soil test[s]" be witnessed, was not met by Broken Stone.[7] The planning board argues that conditional approval by a board of health has the effect of disapproval if the conditions are not satisfied, relying upon *K. Hovnanian at Taunton, Inc.* v. *Planning Bd. of Taunton*, 32 Mass. App. Ct. 480, 486 (1992). That case turned on the developer's failure to show that "perfected arrangements" had been made to connect the sewer lines shown on the plan to a municipal sewer system, leaving in question the viability of the entire system for the proposed subdivision. We noted in that case that "the planning board *had no choice* but to disapprove the plans because it could not resort to the alternative of modifying the plans [under G. L. c. 41, § 81U] to bring them into conformity with the recommendations of the board of health" (emphasis added). *Ibid.* The planning board there was unable to reconcile its own responsibilities under § 81M to "secur[e] adequate provision for . . . sewerage" with the recommendation of the board of health. The planning board here is not so constrained.

Individual, on-site disposal systems are permitted under the

---

[6]The board of health document is somewhat ambiguous. It characterizes its action as an "approv[al]" of the subdivision plan, with three "notations." We take these notations to be conditions for approval.

[7]See note 5, *supra*.

rules and regulations of the planning board as well as the regulations of the board of health. The question here, unlike *K. Hovnanian at Taunton, Inc., supra,* is not whether there is any disposal system available, but whether the soil will accommodate a permitted on-site system at the location chosen by a future lot owner, and that depends upon the type of business, the size of the proposed building, and the location of the system. These factors will not materialize until someone purchases a lot in the approved subdivision. At such time as a lot owner proposes construction, the owner will first have to apply for a sewage disposal permit with the board of health in accordance with that board's regulations, which require ground water and percolation tests. The conditional approval of the board of health was appropriate to the nature of an on-site system.

Since this case involves individual sewage disposal units rather than interconnection of sewer lines to a municipal sewage system, we think it is controlled by our decision in *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. at 185, rather than *K. Hovnanian at Taunton, Inc., supra.* Accordingly, it was premature and inappropriate for the planning board to disapprove the subdivision where the board of health gave its conditional approval.

The second condition of the board of health, that there be a connection to a municipal sewer system in a neighboring town, is not based upon any rule or regulation of the planning board or the board of health. Rather, it was a recommendation, and as such could not contradict its own regulations or those of the planning board, both of which permitted on-site leaching systems. See *Independence Park, Inc.* v. *Board of Health of Barnstable,* 403 Mass. 477, 481 (1988). That recommendation, precluding as it did a system permitted under the regulation, was improper.[8] The judge did not err in rejecting the board's reliance on that ground to disapprove the plan.

The third condition set by the board of health, that prior to any construction, evidence be submitted demonstrating the absence of harmful chemical contaminants in the ground water and soil, has no apparent relation to the merits of the subdivision plan. While the concern of the board of health may be legitimate, that board has the power to require such testing

---

[8]Of course, under its own regulations, the board of health could entertain an application for a variance brought by Broken Stone to tie into the Waltham municipal sewer system.

independent of the subdivision approval process, and the absence of such testing during the subdivision approval process does not constitute a proper basis for disapproving the subdivision plan. See *MP Corp.* v. *Planning Bd. of Leominster,* 27 Mass. App. Ct. 812, 820 (1989). See also *Daley Constr. Co.* v. *Planning Bd. of Randolph,* 340 Mass. at 153-155.

The judgment of the Land Court is to be modified by adding a sentence at the end as follows: "The planning board is hereby ordered to approve and endorse the plaintiff's definitive subdivision plan, on condition that no building or structure shall be built or placed upon any lot without consent by the board of health of Weston."[9] The matter is also remanded to the planning board for determination of a method to secure performance, pursuant to G. L. c. 41, § 81U. The judgment, as so modified, is affirmed.

*So ordered.*

---

[9]See G. L. c. 41, § 81U, third par.