347 Mass. 40 (1964)
196 N.E.2d 209
ALBERT P. ROUNDS & another, trustees,
vs.
BOARD OF WATER AND SEWER COMMISSIONERS OF WILMINGTON & another.
Supreme Judicial Court of Massachusetts, Middlesex.
January 8, 1964.
February 12, 1964.
Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.
Arnold W. Hunnewell, Jr., for the respondents.
Eugene L. Tougas for the petitioners.
CUTTER, J.
This is a petition by the trustees of a real estate trust for a writ of mandamus to compel the board and the town manager to furnish water to three lots, abutting Evans Drive, a private way in "Hathaway Acres Extension" (the extension). The trial judge made findings which he adopted as a report of material facts. He ordered that a writ issue commanding the board to proceed forthwith to furnish water to houses being built on the three lots. The board and the town manager appealed. The evidence is reported. The facts are stated principally upon the basis of the judge's findings and a stipulation.
Before June 30, 1956, the planning board had approved plans of a subdivision known as Hathaway Acres (the original subdivision) adjoining the extension on its west side. The trustees then installed water mains in various streets of the original subdivision, all now public ways. One of these streets, Hathaway Road (running roughly east and west), and the water main in it, now run into the extension and into Evans Drive. None of these mains is less than six inches in diameter. In the original subdivision, in part of Carson Avenue, now a public way, a two inch main was installed. This is connected to a six inch main in a subdivision *42 lying to the north of both the original subdivision and the extension. This six inch main in turn is supplied from a town main.
Early in 1961, a preliminary plan for the extension subdivision was being discussed by one of the present trustees, by the planning board, and by the town water board.[1] The water board was considering the arrangements for furnishing water to the extension. On January 5, 1961, the water board informed Albert Rounds, one of the trustees, that the proposed extension subdivision plan would be feasible only if the two inch main on Carson Avenue was replaced by a six inch main. On February 2, 1961, this requirement was formally voted by the water board "to insure good circulation," and this action was reaffirmed in substance at a meeting of the board on June 29, 1961. The planning board was given written statements of this requirement on February 10 and on June 30, 1961. On July 11, 1961, at a meeting of the planning board, Rounds "was informed ... that the [w]ater [d]epartment approved the main layout with the modification relating to the replacement of the main in Carson Avenue. Rounds ... asked if this would be adequate for future homes...." He was told that this information would be sent to him.
The application for the approval of the extension subdivision plan contained provisions pursuant to par. 8 of the planning board's regulations (see fn. 1, supra), including a certificate "that arrangements have been made with the appropriate ... [t]own [d]epartments ... for supplying to every lot in the subdivision ... water...." The plan was approved by the planning board on August 21, 1961. *43 See G.L.c. 41, § 81U. The planning board by indorsement upon the extension subdivision plan, made its approval "subject to a covenant ... running with the land... that the construction of ways and installation of municipal services shall be provided in accordance with Wilmington [p]lanning [b]oard [r]ules and [r]egulations to serve a lot before such lot may be built upon or conveyed other than by mortgage deed."
No appeal was taken by the trustees from the planning board's approval of the subdivision plan or from the covenant and conditions therein imposed. The members of the water board now refuse to supply water to the three dwellings until the trustees have installed a six inch water main in Carson Avenue. The trustees refuse to do this.
The trial judge found expressly that the trustees, "prior to the approval of the plan ... were aware of the requirement that the [water] [b]oard ... imposed as to the replacement of the water main.... The conditions of the covenant noted on the plan are in accordance with the provisions of the statute and regulations of the [p]lanning [b]oard." He ruled "that this covenant ... does not permit or require the imposition of the condition which the [water] [b]oard ... seek to impose ... namely, to make replacement of the main in Carson Avenue which is now a public way. Such a condition ... is ... beyond the scope of the covenant, governing statutes and regulations of the [p]lanning [b]oard. Even if the conditions were proper, the covenant as stated is not broad enough to include the same."
1. The proceeding is against the water board to compel it to furnish service. The water board's action is not controlled by the action of the planning board, for that board cannot speak for and bind other agencies of the town in matters as to which such agencies have independent responsibility. See Medford v. Fellsmere Realty Co. Inc. 345 Mass. 477, 481. Doubtless, the water board should work in consultation with the planning board, but the water board must perform properly the duties imposed upon it. See *44 G.L.c. 40, §§ 38-40, as amended; c. 41, §§ 69, 69A (inserted by St. 1938, c. 172, § 4).
The record does not indicate that the water board's refusal of water service was unreasonable. The trustees, when they developed the original subdivision, installed the two inch pipe in Carson Avenue. They later started to develop the adjacent extension. The two inch pipe apparently was adequate for the needs of the original subdivision. The water board now merely requires that the capacity of the original installation be supplemented as a condition of supplying water to the extension through the pipes in the original subdivision.
A town water system or private utility is obliged to furnish water to each prospective customer "on the same terms on which it... [furnishes] water to others" (see B & B Amusement Enterprises, Inc. v. Boston, 297 Mass. 307, 308), but it does not follow that all prospective customers are similarly situated so that the same terms must be applied to all of them. Prospective customers whose demands for water necessitate extensions of existing systems may stand on a different basis from those whose requirements may be met from immediately adjacent town or water company mains. A municipality engaged in furnishing water service (subject to whatever statutory regulation there may be) is permitted to exercise a reasonable and fair discretion in determining whether and upon what terms to make extensions of its lines. See Lawrence v. Richards, 111 Maine, 95, 100-104; Greenwood v. Provine, 143 Miss. 42, 53-54; Rose v. Plymouth Town, 110 Utah, 358, 361-362; McQuillin, Municipal Corporations (3d ed.) § 35.27; Rhyne, Municipal Law, § 23-5; Annotation, 48 A.L.R.2d 1222. See also Brasier v. Lincoln, 159 Neb. 12, 22, cert. den. 348 U.S. 926. Cf. Wickenburg v. Sabin, 68 Ariz. 75, 77-80; Reid Dev. Corp. v. Parsippany-Troy Hills, 10 N.J. 229, 234-238; Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 442-444; Yardville Estates, Inc. v. Trenton, 66 N.J. Super. 51, 61. The record does not show any abuse of that discretion in requiring the installation of a pipe that the *45 expansion of the water system into the extension has made necessary, particularly in view of the action taken in pressing the application for approval of the extension subdivision plan before the planning board (with knowledge of the water board's requirements) and the planning board's decision. These we now consider.
2. The planning board's regulations (par. 8) called upon the trustees to arrange with the town for water as one of "the necessary ... utilities."[2] In the circumstances, the certificate (which does not appear to have been modified before approval of the plan) that this had been done by implication at least constituted acquiescence in what it was known the water board required as a condition precedent to obtaining water. This requirement was incorporated in the covenant on the plan, by general reference, certainly as against the trustees, who are charged with knowledge that approval of the extension plan was obtained only because of the apparent acquiescence in the water board's requirement. In these circumstances, the planning board's action strongly supports the action of the water board in exercising its discretion to refuse service to the three lots until the trustees in fact comply with the requirement implicit in the planning board's decision. If the trustees or Rounds felt that the planning board had imposed a requirement which was unreasonable or beyond the authority of the board, their remedy was by appeal under G.L.c. 41, § 81BB (as amended through St. 1957, c. 199, § 2).[3] This remedy they did not pursue. Cf. the Castle Estates, Inc. case, 344 Mass. 329.
*46 3. Two further matters discussed by the trustees should be considered. (a) Paragraph 8 of the planning board's regulations did not require the submission of the extension plan to another "board ... prior to its submission to the planning board" in violation of G.L.c. 41, § 81Q (as amended through St. 1960, c. 417).[4] Paragraph 8 merely requires that all necessary action be taken to make arrangements for water. If the water board required the submission of the plan to it, that was merely incidental to its determination of its own action.
(b) The provision of an adequate system of water pipes is not beyond the proper scope of inquiry of the planning board in connection with approval of a subdivision plan. See G.L.c. 41, § 81M (as amended through St. 1957, c. 265), and § 81U (as amended through St. 1960, c. 266, § 2); Daley Constr. Co. Inc. v. Planning Bd. of Randolph, 340 Mass. 149, 154-155. See also Stoneham v. Savelo, 341 Mass. 456, 458. The trustees point out that G.L.c. 41, § 81Q (see fn. 4, supra), provides that the planning board's regulations "shall set forth the [board's] requirements ... with respect to ... ways shown on a plan and the installation of municipal services therein" (emphasis supplied). We do not view this provision as preventing the planning board from imposing by its regulations a general and reasonable requirement that an applicant for approval of a subdivision plan shall show that he has perfected arrangements which will make possible service of the subdivision by the usual utilities, including water. If, in considering whether the subdivision will have an adequate system of water pipes, the water department or water company concerned reasonably requires construction outside the subdivision as a condition of supplying service, that, in the absence of an appeal under c. 41, § 81BB (fn. 3, supra), is a condition with which the planning board may properly expect compliance, especially *47 where the applicant has certified that arrangements for water have been completed.
4. The order for judgment is reversed. The petition is to be dismissed.
So ordered.
NOTES
[1] Section VI-A, par. 8, of the planning board's regulations provided, "Before submission of an application [for approval of a subdivision plan], the applicant shall have arranged with the appropriate utility companies and [t]own [d]epartments for supplying every lot ... with the necessary private and public utilities. The applicant shall state in his application that he has made such arrangements supported by ... proof ... and that he agrees to bear any charges that may be made for providing such services to every lot...." The record does not indicate clearly whether the trustees were the applicants or whether Albert Rounds was then owner and applicant. As he is now one of the trustees, they are in any event charged with his knowledge of the proceedings before the water board and the planning board.
[2] Doubtless, more detailed regulations would have been appropriate. See Castle Estates, Inc. v. Park & Planning Bd. of Medfield, 344 Mass. 329, 334. See also Doliner v. Planning Bd. of Millis, 343 Mass. 1, 6. Similarly the requirement in the covenant indorsed on the extension plan concerning the pipe in Carson Avenue should have been specific so that purchasers of lots without other notice of the requirement would be as clearly charged with notice of it as were these who had participated in the discussions with the planning board and the water board.
[3] Section 81BB reads, in part, "Any person ... aggrieved ... by any decision of a planning board concerning a plan of a subdivision ... or any municipal officer or board, may appeal to the superior court sitting in equity ... within twenty days after such decision has been recorded in the office of the ... town clerk.... The foregoing remedy shall be exclusive...."
[4] Section 81Q reads, in part, "[A] planning board shall adopt... rules and regulations ... [which] shall set forth the requirements of the board with respect to the location, construction, width and grades of the proposed ways shown on a plan and the installation of municipal services therein.... Such rules and regulations shall not require referral of a subdivision plan to any other board or person prior to its submission to the planning board."