FRANK LYMAN *vs.* PLANNING BOARD OF WINCHESTER.

Middlesex. February 9, 1967. — March 8, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Subdivision Control.*

A municipal planning board, whose rules and regulations required an applicant for its approval of a subdivision plan to bring to the exterior boundaries of the subdivided land from within it extensions of streets, sewers, storm drains, and water lines which could connect with similar facilities in adjacent lands, properly might refuse under G. L. c. 41, § 81R, as amended through St. 1955, c. 411, § 1, to require such extensions upon approving a definitive subdivision plan of land where it appeared that in view of the contour of the land the board, relying on "valid engineering and other pertinent factors governing sound planning and development," could reasonably conclude that no useful purpose would be served by requiring such extensions, that they would do the adjacent land little good, and that, for the proper development of the adjacent land, access thereto other than from the subdivided land must be obtained in any event.

BILL IN EQUITY filed in the Superior Court on March 9, 1965.

The suit was heard by *Kalus,* J.

*Edward O. Proctor* for the plaintiff.

*Vincent P. Clarke,* Town Counsel, for the defendant.

*Bernard Kaplan* for the intervener, Frank Catalano, Inc.

CUTTER, J. Lyman filed an appeal in the Superior Court with respect to the Winchester planning board's approval of a definitive subdivision plan filed by Frank Catalano, Inc. (Catalano) on January 4, 1965. See G. L. c. 41, § 81BB (as

amended through St. 1957, c. 199, § 2).    Catalano was allowed to intervene.    Lyman has now appealed to this court, from a final decree dismissing the bill.    The case is before us upon the evidence and a report of material facts.

Catalano owned about seven and one-half acres of vacant land in Winchester in an area largely developed to the north and east.    On the south and west Catalano's land is almost entirely bounded by over thirty-two acres of undeveloped land owned by Lyman.    The Catalano land slopes down northerly from a high point at its boundary with the Lyman land.    The Lyman land slopes down for about 120 feet south from the Catalano boundary, then dips into a valley.

The Lyman land is in part woodland with outcroppings of ledge, is potentially a fine residential area, and is largely surrounded by other privately owned land and town land. It abuts on a public way (High Street) only at its extreme southwest corner on a frontage of 111 feet.    The access from High Street to the Lyman land narrows, not far from the highway, to a width of twenty feet at one point.    There is possible access to the land at one point on its easterly boundary.    This access would be over Girard Road, a "private way that has been approved by the [b]oard of [s]urvey" upon the basis of a layout forty feet wide.[1]    To have appropriate access to a development on his land, Lyman (even with some access over Girard Road) would be obliged to buy additional land near High Street (to widen his access from that direction) or to obtain other access.

The controversy in the present case arises from the planning board's rules and regulations.[2]    See G. L. c. 41, § 81Q

---

[1] The easterly part of Girard Road has been accepted as a public way with a grade of 14.6%.    Girard Road has been privately paved to a point 120 feet from the Lyman land.    The intervening 120 feet is woodland.

[2] Among other things required are (II–7) application for approval of a definitive subdivision plan upon a special form, and (II–4) the prior approval of certain aspects of the plan by the town engineer and the water and sewer boards.    No issue is now presented whether the requirement that these officials approve is still valid after the amendment of c. 41, § 81Q, by St. 1960, c. 417. See *Rounds* v. *Board of Water & Sewer Commrs. of Wilmington*, 347 Mass. 40, 46.

(as amended through St. 1960, c. 417; see later amendment by St. 1965, c. 64). Certain of these regulations provide that a definitive plan shall take into account conditions and facilities on property adjoining the land being subdivided.[3]

In 1961 Catalano filed a preliminary subdivision plan which showed one way extending as a dead-end street south to the boundary between the Catalano land and the Lyman land. It also showed an extension to that boundary of sewer, storm drainage, and water lines. These extensions were eliminated in the definitive plan, upon the recommendation of the planning board. At a public hearing on February 1, 1965, Lyman objected to approval of the definitive plan because it did not give him access to the proposed roads on the Catalano land (at a time when it seemed that he might lose his access to High Street) and because it did not comply with the regulations (fn. 3). The board approved the plan on February 18, 1965.

One member of the board, in testimony on which the trial judge obviously relied, gave as the reason for the board's failure to require the extension of roads and sewer lines to the Catalano-Lyman boundary the topographical irregularities of both parcels. He pointed out (a) that the extension of one of the roads proposed for construction on Catalano's land would necessitate a grade not acceptable under the town's regulations and (b) that any method of solving the grade problem would either "injure Catalano seriously and . . . be of no gain to . . . [a possible] Lyman develop-

---

[3] Section III–1 (Street System) reads, in part, "(e) If adjoining property is not subdivided but is, in the opinion of the [b]oard, suitable for ultimate development, provision shall be made for proper projection of streets into such property by continuing appropriate streets within the subdivision to the exterior boundary thereof." Section IV reads, in part, "IV–3. Storm Drainage. . . . (b) Proper connections shall be made with any existing drains in adjacent streets or easements. Where adjacent property is not subdivided, provision shall be made for proper projection of the drainage system by continuing appropriate drains to the exterior boundaries of the subdivision at such size and grade as will allow for such projection." "IV–4. Water and Sewer Facilities. . . . (b) Proper connections shall be made with the existing public sewer and water systems. Where adjacent property is not subdivided, provision shall be made for proper projections of the systems by continuing appropriate sewers and water mains to the exterior boundaries of the subdivision, at such size and grade as will allow for the projections."

ment" or would "seriously injure the Lyman land and . . .
be of no gain to the Catalano interests." He testified that
the contour of the land was such that drainage from the
Lyman land to the Catalano land could not be accomplished
in "a gravity system." The evidence, including expert
testimony and contour maps, shows that these views were
justified. The trial judge concluded that the board's "de-
cision was based upon valid engineering and other perti-
nent factors governing sound planning and development."

1. The subdivision control law (G. L. c. 41, § 81Q) re-
quires each city and town to adopt reasonable rules and
regulations.[4] Catalano, however, argues that there is no
statutory authority for the Winchester regulations (fn. 3)
that certain facilities be extended to adjoining undeveloped
land. See, however, G. L. c. 41, §§ 81M (as amended
through St. 1957, c. 265),[5] 81Q, 81U (as amended through
St. 1964, c. 105, § 2; see later amendment, St. 1965, c. 62).[6]

We need not decide the extent to which local regulations,
adopted under § 81Q, may require (within reasonable lim-
its) an owner so to frame his definitive subdivision plan as

---

[4] See *Daley Constr. Co. Inc.* v. *Planning Bd. of Randolph*, 340 Mass. 149,
151; *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 163–164; *Stone-
ham* v. *Savelo*, 341 Mass. 456, 458, fn. 1; *Doliner* v. *Planning Bd. of Millis*,
343 Mass. 1, 6; *Doliner* v. *Town Clerk of Millis*, 343 Mass. 10, 12–13, fn. 2;
*Francesconi* v. *Planning Bd. of Wakefield*, 345 Mass. 390, 392–393; *Toothaker*
v. *Planning Bd. of Billerica*, 346 Mass. 436, 440; *Aronson* v. *Sharon*, 346 Mass.
598, 605.

[5] Section 81M states that the planning board's powers shall be exercised,
among other things, "for securing adequate provision for water, sewerage,
drainage and other requirements . . . and for co-ordinating the ways in a
subdivision with each other and with the public ways . . . and with the ways
in neighboring subdivisions."

[6] Decisions bearing upon the scope of planning board powers to require
activity outside a proposed subdivision include *Castle Estates, Inc.* v. *Park &
Planning Bd. of Medfield*, 344 Mass. 329, 334 (a planning board, in the absence
of adequately comprehensive and specific regulations, may not require a sub-
division water system to be connected with an outside supply and the acquisi-
tion of a drainage easement on adjacent land), and *Rounds* v. *Board of Water
& Sewer Commrs. of Wilmington*, 347 Mass. 40, 46 (planning board may re-
quire "provision of an adequate system of water pipes" and also, as a con-
dition of approval of a subdivision plan, reasonable construction outside the
subdivision if that is necessary to provide water service for the subdivision).
See *Gordon* v. *Robinson Homes, Inc.* 342 Mass. 529, 531–532 (subdivision con-
trol "law is . . . designed primarily to benefit the inhabitants of cities and
towns generally").

to assure, in the public interest, not only (a) that the particular subdivision will have adequate roads, drainage and sewer systems, and water and other utility lines, but also (b) that these facilities will be so arranged as to connect appropriately with similar facilities in adjacent developed and undeveloped areas. Catalano has not been required to provide facility connections with Lyman's land. Instead, the planning board has decided that there is no justification for applying the regulations (fn. 3) to Catalano's land in view of the character of Catalano's and Lyman's parcels.

2. The question for decision thus is whether, assuming the regulations to be valid, the planning board was justified in approving Catalano's definitive plan without requiring it to extend to its boundary with Lyman at least one road in his subdivision and the water, sewer, and drainage lines.

The evidence justifies the trial judge's findings concerning the Catalano and Lyman parcels and his conclusion that the planning board's decision "was based upon valid engineering and . . . factors governing sound planning and development." He correctly ruled that the board's regulations did not preclude it from approving Catalano's plan without requiring it to project its roads, water lines, and sewers to the boundary. The board could reasonably conclude (a) that no useful purpose would be served by such action, (b) that, even if the access from High Street and Girard Road should turn out to be inadequate, providing road, water, and sewer access to the Lyman land from Catalano's land would do Lyman little good, and (c) that, for the proper development of the Lyman land, access from other directions must be obtained in any event.

In deciding not to apply the regulations (fn. 3) the board could rely upon c. 41, § 81R (as amended through St. 1955, c. 411, § 1).[7] Section 81R gives recognition to the fact that a regulation, although in general sound and reasonable,

---

[7] Section 81R reads, in part, "A planning board may in any particular case, *where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law,* waive strict compliance with its rules and regulations, and with the frontage or access requirements specified in said law . . ." (emphasis supplied).

may be unreasonable when applied to particular land or in unusual circumstances. The standards, by which the board is to determine whether in any case it will decline to apply the regulation, are adequately set out in terms of the "public interest" and of consistency "with the intent and purpose of the subdivision control law." See c. 41, § 81M. An administrative regulation, like a zoning by-law, may not be applied to a parcel of land where (because of the peculiar circumstances of the parcel) application of the regulation will serve no public interest and will have no rational relation to the public safety, health, morals, welfare, and convenience. See *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, 444, 450; *Jenckes* v. *Building Commr. of Brookline,* 341 Mass. 162, 166; *Aronson* v. *Sharon,* 346 Mass. 598, 605.

*Final decree affirmed.*