Cowin, J.
Plaintiffs William F. Abbott and Rose G. Abbott (the “Abbotts”) commenced this action in the nature of mandamus against defendant Board of Water and Sewer Commissioners for the Town of Hopkinton (the “Board”) pursuant to G.L.c. 249, §5. The Abbotts seek to compel the Board to issue sewer connection permits to thirteen lots within a subdivision they own. The parties have both moved for summary judgment. For the reasons discussed below, summary judgment is granted in favor of the defendant Board.
*449 BACKGROUND
The record in this case includes the following undisputed facts. The plaintiffs are owners of an approved subdivision known as Elmwood Farms III (the “subdivision”). In 1992, the Abbotts sought to sell a portion of the subdivision shown as lots 1A through 20A, inclusive on the recorded plan (the “8IP lots”).
The 8 IP lots are adjacent to the thirteen lots which are the subject of this dispute, and all of these lots are situated along what is now called Blueberry Lane, Hopkinton, Massachusetts. In order to sell the lots, the Abbotts requested permission from the Board to extend the municipal sewer line over that portion of Blueberry Lane (“the lane”) on which the 8 IP lots are located. On October 16, 1990, the Board granted this request but specifically limited the sewer permit to twenty contiguous buildable lots on either side of the lane. The Board further stated that “any future development will be subjected to hookup policies not yet determined by the Board.” The Abbotts did not appeal this decision.
On July 30, 1992, the Abbotts submitted plans to the Board for water and sewer service to the subdivision. On September 21, 1992, defendant Kenneth Weismantel (“Weismantel”) responded by letter stating that “(t]he Board does not anticipate being in a position to approve sewer service beyond the 20 lots in the near future. We will not approve any construction plans that extend the lines beyond the approved 20 lots.”
In November, 1992, the Abbotts requested that the Planning Board for the Town of Hopkinton (“Planning Board”) release the lots from the requirement in G.L.c. 41, §81(U) and related Planning Board covenants that no lot can be conveyed (other than the entire parcel shown on the subdivision plan or all lots not previously released by the Planning Board) prior to providing the ways and services for such lots. On November 30, 1992, the Planning Board granted this request on the condition that a water line and sewer line be installed the full length of what is now known as Blueberry Lane in accordance with the requirements and specifications of the Board of Water and Sewer Commissioners. Weismantel, who also attended the meeting, reiterated at several points during the discussion that the Board was not in a position to grant more sewer permits. Mr. Greenwald, the Abbotts’ attorney, stated that he hoped to get the additional sewer permits but it was not guaranteed.
On April 23, 1993, the Board again discussed the subject of sewer service to the Abbotts’ subdivision. Weismantel repeated that the Board was not in a position to grant service beyond the 81P lots. Mr. Greenwald was asked if the Abbotts were aware that construction of the sewer line beyond the 8 IP lots was at their own risk because no additional sewer connections may be forthcoming. Mr. Greenwald replied that the Abbotts realized that construction was at their own risk and that it was economically beneficial to them to install the line the full length of Blueberry Lane.
During the summer and fall of 1993, the Abbotts received several written notices from the Town of Hopkinton Sewer Department stating that further sewer permits were not authorized. Nevertheless, the Abbotts substantially completed the installation of water and sewer pipes beyond the 8 IP lots to the thirteen lots at issue in this case. On September 15, 1993, the Sewer Department was requested on behalf of the Abbotts to inspect installation of the sewer line in front of the thirteen lots. When this request was refused, the Abbotts hired an independent engineer who inspected the sewer line and reported that it was properly installed. On September 22, 1993, the Sewer Superintendent ordered that no connections be made to any portion of the sewer line beyond the 8IP lots.
The Abbotts now challenge the Board’s refusal to issue sewer permits to connect the additional thirteen lots. They allege that they have a statutory right to these permits under G.L.c. 83, §3 and that the Board’s actions constitute a denial of their equal protection and due process rights. In addition, the Abbotts claim that they are entitled to the permits because the subdivision falls within an area designated to be served by the Westborough Treatment Plant and there is sufficient capacity in the system to accommodate the additional flow. The towns of Hopkinton and Westborough have intermunicipal agreements which provide that the Westborough Treatment Plant is to accept wastewater from designated service areas in Hopkinton. Thus, the Abbotts claim that the sewer agreements warrant the connection of the subdivision to the sewer because a portion of their subdivision falls within one of those designated areas and the entire subdivision falls “generally” within the same area.[3]
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassessov. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the parly entitled to judgment as a matter of law. Cassesso, supra at 422.
Claim under G.L.c. 83, §3
G.L.c. 83, §3 provides in pertinent part:
The board or officers of a ciiy or town having charge of the repair and maintenance of sewers may, upon request of the owner of land and payment by him of the actual cost thereof, construct a particular sewer from the street line to a house or building. A town may appropriate money for connecting estates within its limits with common sewers, and no estate shall, in any year in which such an appropriation *450 is made, be connected with a common sewer except in the manner hereinafter provided ... If the board of health of a town making such appropriation shall order land abutting upon a public or private way in which a common sewer has been laid to be connected with such sewer, or if the owner of such land shall make to the board or officer having charge of the maintenance and repair of sewers- application to connect his land with a common sewer, such board or officer shall make such connection.
The Abbotts contend that they meet the statutory requirements set forth in G.L.c. 83, §3. They allege that the subdivision abuts a private way upon which a common sewer has been laid; that they have made proper application for connection to the common sewer; and that, therefore, pursuant to the statute, the Board is obligated to make the requested connection. See Clark v. Board of Water and Sewer Commissioners of Norwood, 353 Mass. 708 (1968). The flaw in this argument, however, is that the sewer pipe installed in front of the thirteen lots in question does not constitute a common sewer. The Abbotts built the sewer pipe in front of the thirteen lots in question. A privately-built sewer line becomes part of the public sewer system only upon some action of the town. See Exeter Realty Corp. v. Bedford, 356 Mass. 399, 404 (1969); Riccio v. Dandreo, Civil No. 2639 (Essex Super. Ct.) (February 13, 1995), [3 Mass. L. Rptr. 420 (May 8, 1995)]. In this case, the town has not acted to declare the sewer line in front of the thirteen lots a common sewer. Therefore, the Abbotts do not have a statutory right to a connection permit. Further, the town, through the actions of the Board, made it abundantly clear to the Abbotts that further sewer permits were not guaranteed.
The fact that the Planning Board conditioned its release of the 8 IP lots on full extension of the water and sewer line does not mandate a different result. The “water board’s action is not controlled by the action of the planning board, for that board cannot speak for and bind other agencies of the town in matters as to which such agencies have independent responsibilily.” Garabedian v. Water & Sewerage Board of Medpeld, 359 Mass. 404,406 (1971), quoting Rounds v. Board of Water & Sewer Commissioners qfWilmington, 347 Mass. 40,43 (1964). Moreover, as stated above, before the Abbotts began construction of the sewer pipe they were fully aware that future permits were uncertain. If the Abbotts wanted to contest the Planning Board’s requirement their remedy was an appeal under G.L.c. 41, §81BB. Rounds v. Board of Water & Sewer Commissioners of Wilmington, supra at 45.
Constitutional Claims
The Abbotts also allege that the denial of the sewer permits constituted a violation of their equal protection and due process rights under the federal and state constitutions. The gist of their argument is that the action of the Board in approving the connection of the 81P lots and denying the additional thirteen amounted to an irrational and arbitrary decision.
As a threshold matter, it should be noted that the plaintiffs’ complaint does not include claims for constitutional violations or for money damages. In any event, the Abbotts’ constitutional claims are groundless. The plaintiffs have not identified a constitutional right of which they have been deprived. See Rosenfeld v. Board of Health of Chilmark, 27 Mass.App.Ct. 621, 627 (1989). As discussed earlier, the Abbotts have no statutoiy right to a sewer connection. The Board has considerable discretion in the granting or denial of sewer permits. G.L.c. 83, §1 provides that “[a] ciiy or town may . . . operate a system or systems of common sewers ... as they adjudge necessary for the public convenience or the public health . . . [and] sewer commissioners . . . acting for and on behalf of a city or town, may ... do any other thing proper or necessary for the purpose of this section . . .” In light of the degree of discretion invested in the Board, the plaintiffs cannot show they have a “property” interest in a sewer permit. K. Hovnanian at Taunton, Inc. v. Taunton, 37 Mass.App.Ct. 639, 646 (1994), review denied, 419 Mass. 1104 (1995). Even if a property interest under state law were asserted, denial of a land use permit is not ordinarily a violation of a constitutional right “regardless of how disappointed the privilege seeker may feel at being turned down.” Id. at 627-28, quoting Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 832 n.9 (1st Cir. 1981). The plaintiffs’ equal protection claim must also fail. See Rosenfeld, supra.
Intermunicipal Agreements
Finally, the Abbotts contend that the. agreements between the towns of Hopkinton and Westborough (the “Agreements”) for the treatment of Hopkinton wastewater entitles them to connect the thirteen lots and possibly the entire subdivision to the common sewer system. This argument is without merit regardless of whether the lots in question fall within the areas designated by the Agreements. Even assuming, for the purposes of this motion, that Westborough would be obligated to accept wastewater from the subdivision lots, that fact would not usurp the Board’s authority to grant or deny sewer permits to individual lots within the designated areas.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs motion for summary judgment is DENIED. It is further ORDERED that defendant’s motion for summary judgment is ALLOWED.

This fact is disputed by the defendants. However, for the purposes of summary judgment only, the court accepts the plaintiffs assertion as true.