Garsh, J.
On behalf of the residents and property owners of Bay View, a private subdivision located in South Dartmouth, Massachusetts, the plaintiffs seek a declaratory judgment that the defendant Town of Dartmouth (the ‘Town”) and its Board of Public Works (the “Board”) are obligated to maintain and repair, at public expense, common water lines running under the private roads of the subdivision used to furnish town water to Bay View residents. The plaintiffs also *92 seek a permanent injunction requiring the Town to maintain and repair said water lines, as well as recovery of damages as a result of expenses incurred due to the Town’s past refusal to repair the water mains.
FINDINGS OF FACT
Based on all the credible evidence and reasonable inferences drawn from that evidence, the court finds the following facts:
Bay View is a residential subdivision in South Dartmouth, Massachusetts which was created by a plan recorded in 1890 in the Bristol County Registry of Deeds. The streets in Bay View have never been presented to the Town for acceptance as public ways. Each properly owner owns the fee in his property to the center line of the way abutting his or her property.
Individual property owners in Bay View formed the Bayview Improvement and Water Corporation (“BVIC”) in the 1950’s as a nonprofit corporation to do and provide such things as shall be conducive to the comfort and convenience of the residents of Bay View. BVIC has no power of assessment over Bay View property owners; all of its activities are funded through voluntary contributions by its members.
At a Special Town Meeting on November 13, 1950, the Town voted to extend water service to Bay View and two other private subdivisions not then connected to the town waterworks, with the extensions to be financed by frontage guarantees between the Town and subscribers to the Town’s water service in the newly-served communities. Each resident of Bay View who subscribed to Town water service executed a frontage guarantee with the Town in which, in consideration of the laying of a water main pipe by the Town in a Bay View way, the resident agreed to pay a proportional share of the cost of the water main installation in an amount based upon the frontage of his or her property and also agreed that the Board of Assessors could increase the valuation of said property to the amount required to cover the proportional share of the cost of construction.[3] It was also agreed that, upon application for service from the proposed water main pipe, the resident would pay the cost of installing the service line from the water main into the resident’s own property. I do not infer that the residents intended to purchase the water main pipes to be laid under the private ways. A portion of the water main does not belong to each abutting land owner as an appurtenance of his or her realty.
In 1951, water mains were installed in Bay View. Sixty-three separate properties in Bay Viewwere billed a frontage charge; they subsequently were connected to the water supply and became consumers of the Town’s water. The Town obtained no easement from the residents of Bay View. There is no written agreement or evidence of any oral agreement concerning the maintenance of the common water lines or other infrastructure installed by the Town when it extended the town water system into Bay View. For thirty years after extending water service to Bay View, the Town maintained and repaired the water system on, under, and in public ways and on, under, and in private ways wherever located in the Town.
In 1962, through special legislation, the Board was created and given the powers and duties of water and sewer commissioners as well as responsibility for the Town’s public ways and trees in the public’s right of way.
On November 18, 1981, due to budgetary constraints, the Board voted not to repair leaks in water mains and services, paint hydrants, or maintain water gates and curb stops within private subdivisions such as Bay View. Notice was provided to water subscribers in Bay View and other affected communities. Following this vote, the Town has not entered upon or performed maintenance and repair in connection with the water system in private subdivisions except for emergencies when it will respond and then bill for such work and except for the maintenance and changing of water meters and the flushing of certain hydrant lines that affect the main lines of the system to alleviate the build-up of sediment in the system. The water mains running through BayView are connected to the mains located on public ways, but can be shut off so that a leak in a common line in Bay View need not disrupt service to users located outside the subdivision.
At Board meetings on June 8, 1983 and July 13, 1983, residents of Bay View, including plaintiff Daniel Hendrie, requested tire Town to resume the responsibility to maintain and repair the water mains located under the private roads of Bay View. The Town denied those requests. The Board formalized its policy in Article V, Section 4 of its rules and policies, adopted at a Board meeting on September 20, 1988 and then adopted at the annual Town Meeting in 1989.[4]
On May 31, 1996, BVIC submitted a petition to the Board requesting that it resume responsibility for maintenance and repair of the water main lines in Bay View. On June 20, 1996, residents of Bay View again requested that the Board resume maintenance and repair of the water lines. After conducting meetings with residents and counsel for Bay View on July 20, 1996, September 5, 1996, September 19, 1996, September 26, 1996, and October 10, 1996, the Board voted to take no action on the petition and informed the representatives of Bay View that they could go to Town Meeting to ask that the streets and ways in Bay View be accepted as public ways or seek other relief from the Town Meeting.
Since the Town decided not to maintain the water mains, there have been four water main breaks at Bay View, one in 1991, one in 1994, and two in 1996. BVIC repaired the first break in 1991 when the Town declined to do so. It spent $5,400 on outside contractors. In 1994, the Town repaired the water main break, but not the damage to the road caused by the repair. The Town billed BVIC $1574.51 for its work, which BVIC *93 paid. In addition, BVIC paid outside contractors $1,850 to repair the road. The Town repaired both of the water main breaks in 1996. The Town billed BVIC, but BVIC has not paid these bills. The Town took no action as a result of BVIC’s non-payment. In 1996, BVIC paid $2437.50 to outside contractors to repair the damage to the road caused by the repairs to the water main.
Plaintiffs Daniel Hendrie and Thomas Puiyear reside in and own properly in Bay View and subscribe to the Town’s water service.
RULINGS OF LAW
As a threshold matter, the Board argues that the plaintiffs lack standing to maintain the present declaratory judgment action. See Gallo v. Division of Water Pollution Control, 374 Mass. 278, 287 (1978) (developers lack standing under c. 231A to challenge a town’s moratorium on new sewer connections without showing the existence of other statutory authority for suing the town). Chapter 231A does not automatically provide an independent basis for standing; rather, a plaintiff must demonstrate the requisite standing. Pratt v. Boston, 396 Mass. 37, 43 (1985). A plaintiffs status as a resident, voter, or taxpayer is insufficient to confer standing under Chapter 231A. Chase v. Planning Board of Watertown, 4 Mass.App.Ct. 430, 431 (1976).
Plaintiffs Hendrie and Puryear, however, are suing not in their capacity as mere residents or taxpayers, but rather in their capacity as consumers of water furnished by the Town via its own waterworks system. They thus allege a particularized injury from the Board’s decision to discontinue maintenance and repair of the. water mains servicing them and other residents of Bay View. They argue that the Town owes them a special duty, not owed to other taxpayers, under G.L.c. 40, §§39A-39E and the common law. See Mitchell v. Secretary of Administration, 413 Mass. 330, 333 n.7 (1992) (dispute over interpretation of a statute is type of dispute appropriately resolved by a suit for declaratoiy relief). The individual plaintiffs are in danger of suffering an injury and have alleged a causal relationship between that injury and a breach of duty owed to them by the public defendant. Burlington v. Bedford, 417 Mass. 161, 164 (1994). Further, insofar as BVIC has been repeatedly billed by the Town for water line repairs, and indeed has paid one such bill, it has standing, on behalf of its members, to seek a declaration concerning the Board’s duty to repair the common water lines at public expense. Accordingly, the plaintiffs have standing to maintain the present declaratory judgment action under Chapter 231A.
The Board also contends that this action is barred by the statute of limitations. It maintains that the plaintiffs’ cause of action began to run either in 1981 when the Board notified them that the Town would no longer maintain the water lines at issue or, at the latest, in 1988 when the Board formalized that decision into a rule.
The instant action for declaratory and injunctive relief is not time barred because it alleges separate and recurrent violations by the Town of a statutory and common law duty to repair common water lines under the private ways at Bay View. Compare Carpenter v. Texaco, Inc., 419 Mass. 581, 583 (1995) (single encroachment creating permanent damage does not constitute a continuing trespass)-with Ahern v. Warner, 16 Mass.App.Ct. 223, 226 (1983) (statute of limitations begins to run anew each time defendants violate their duty to provide lateral support for plaintiffs land).
Insofar as the plaintiffs seek restitution of monies wrongfully received by the Town, such a claim sounds in quasi-contract and is governed by the six year statute of limitations contained in G.L.c. 260, §2. New Bedford v. Lloyd Investment Associates, Inc., 363 Mass. 112, 118 (1973). A claim for restitution accrues upon receipt of the payment sought to be recovered. Id. at 119. The only funds for which the plaintiffs seek to. recover repayment were paid in or after 1991. The present action was commenced on November 22, 1996, and thus the restitution claim is timely.
The complaint also seeks recovery of amounts expended by BVIC to make the repairs which the Town did not; that claim for damages for the Town’s failure to carry out its duty to repair the works sounds in tort. Such a claim is governed by the three year statute of limitations contained in G.L.c. 260, §2A. Some of the moneys paid out by BVIC to third parties for repair work were paid more than three years before this suit was commenced. Such damages may not be recovered.
With respect to the merits of this case, the plaintiffs contend that the Board has a statutory duty to repair the common water lines in the Bay View subdivision, notwithstanding that the roads remain private ways not owned by the town. Chapter 40 of the General Laws sets forth the powers and duties of cities and towns. Section 39A of that statute provides for the creation of a municipal water system, stating in relevant part:
A town . . . may establish a water supply or water distributing system and maintain and operate the same, in accordance with Sections thirty-nine B to thirty-nine G, inclusive.
G.L.c. 40, §39A. Pursuant to this authority, Dartmouth’s Water Department was established by special act, Chapter 135 of the Acts of 1916. Thereafter, in 1962, pursuant to another special act, the Legislature abolished Dartmouth’s existing water department and created the current Board of Public Works as its successor.
With respect to a municipal water system established under Section 39A, Chapter 40, Section 39C provides:
*94 A town may construct and maintain on the lands acquired and held by it . . . standpipes, tanks, fixtures and other structures . .. and do such other things as may be necessary for the establishment and maintenance of complete and effective water works; and for that purpose may construct, lay and maintain aqueducts, conduits, pipes and other works, under or over any lands . . . and public or other ways, and along any such way in said town in such manner as not unnecessarily to obstruct the same; and for the purposes of constructing, laying, maintaining, operating and repairing such conduits, pipes and other works, ... a town may dig up . . . any such lands, highways or other ways in such manner as to cause the least hindrance to public travel thereon . . .
G.L.c. 40, §39C. Section 39E, in turn, provides:
[A]ll works . . . constructed under Sections thirty-nine C . . . shall be managed, improved and controlled by a board of water commissioners ... in such manner as they shall deem for the best interests of the town.
G.L.c. 40, §39E.
Section 39C of Chapter 40 expressly permits, but does not require, a town to place water works under private ways. A town “may” lay pipes under “public or other ways.“G.L.c. 40, §39C. Section 39E makes clear that once a town chooses to do so, its board of water commissioners or the selectmen “shall” manage, improve and control said system. The use of the word “shall” in that statute does not mean “may.” Commonwealth v. Cook, 426 Mass. 174, 180-81 (1997).
Although Section 39E does not mention an obligation to “repair,” the plain and ordinary construction of the phrase “manage, improve and control” encompasses repairs.[5]The term “manage” means “to control and direct; conduct and administer; to work upon or manipulate.” Webster’s Third New International Dictionary (1961). The term “improve" means “to enhance in quality or value; to correct, make more acceptable.” Webster’s Third New International Dictionary (1961). Finally, the term “control” means “to regulate, to check, test or verify; to exercise influence or power over.” Webster’s Third New International Dictionary (1961). Thus, the statutory mandate that a town “work upon,” “check,” and “correct” its water supply system encompasses the repair of leaking pipes.
The Board’s argument that its maintenance duly does not extend to pipes located under private ways ignores the language in Section 39E making it applicable to all works erected or constructed pursuant to Section 39C and the language in Section 39C authorizing a town to construct waterworks under “public and other ways.” Once a town opts to construct works under private ways in order to sell water to residents abutting those ways, then the duty to repair leaking pipes applies whether or not such pipes are located under public or private ways.[6]
The Town fares no better with its suggestion that it could not have a statutory duty to repair because the Town did not retain ownership of the mains it installed under the private ways. The common water lines, which are used only by the Town for the purpose of selling water to the residents of Bay View, are publicly owned by the Town and not privately owned by the residents of the development or the consumers of water. Utility pipes remain the private property of the utility and title to them does not change regardless of changes to the status of the way under which they may run. Cf. Natick Gas Light Co. v. Natick, 175 Mass. 246, 248 (1900). The common lines laid down under the private ways of Bay View for the purpose of distributing water to the residents of that subdivision are clearly a part of the apparatus necessary to be used by the Town in order to sell water to the residents of Bay View.
They constituted a part of the machinery by means of which the [Town’s water] business is carried on, in the same manner as pipes attached to a pump or fire-engine for the distribution of water, or wheels in a mill which communicate motion to looms and spindles, or the pipes attached to a steam-engine to convey and distribute heat and steam for manufacturing purposes, make a portion of the machinery of the mill in which they are used.
Commonwealth v. Lowell Gas Light Co., 94 Mass. (12 Allen) 75, 78 (1866). This is not a case where the private developer of a subdivision installed pipes for the provision of water to the community as sometimes may happen. E.g., Rounds v. Board of Water and Sewer Commissioners, 347 Mass. 40, 44 (1964). This case also does not deal with a consumer’s obligation to repair service pipes connecting the water main to an individual building.[7] E.g., Fisher v. St. Joseph Water Co., 132 S.W. 288, 289 (Mo.App. 1910) (where property owner, in front of whose property plaintiff fell on protruding pipe, had installed the service pipe, stop boxes, and other appliances constituting the connection from the street main to his premises, those appliances belonged to home owner as appurtenances of his realty and consumer bore the burden of expense and maintenance of such betterments); Jackson v. City of Ellendale, 61 N.W. 1030 (N.D. 1894) (where a property owner paid the city the full cost of constructing a lateral service pipe to connect his property with the water main, the owner of the land, rather than the city, owned said pipe and has a duty to maintain it because “[t]he water system established by the city, and which it must maintain, stops at the main”). There is no evidence that a transfer of ownership of the common water lines from the Town to the individual Bay View property owners was ever contemplated, proposed, or effected when the mains were extended into the subdivision.[8] The fact that the property owners agreed to pay a proportional share of the water main installation and to allow an increase in the valuation of their property in exchange for the town *95 extending the water supply system into the subdivision did not turn the unsuspecting residents of Bay View into the proportional owners of the infrastructure with an attendant duty to repair it. No action by the Town after the mains were extended resulted in a transfer of title to the mains to Bay View property owners.
Finally, there is no merit to the Board’s argument that it cannot be responsible for repairing the water lines in Bay View because the Town would be trespassing whenever it entered the subdivision to make repairs. In addition to the language in Chapter 40, Section 39C authorizing a town to “maintain” pipes located under “public or other ways” and to dig up any such ways for the purpose of repairing such pipes, Section 39D of that statute allows a town to “occupy temporarily” any lands necessary to accomplish any of the purposes authorized by Sections thirty-nine A to thirty-nine E. See also G.L.c. 187, §5 (“Neither the person installing or repairing public utility facilities, nor the gas, electricity, telephone or water service transmitted shall be deemed to constitute a trespass upon said way or ways”). Thus, the Town may enter Bay View and repair the water lines underneath the roads of that subdivision without fear that it will be trespassing.
Wholly independent of the statute, as the plaintiffs contend, the Board has a common law duty to. maintain and repair its water lines just as would a private utility. In supplying water at a price, a municipality is not performing a governmental function, but rather is engaging in trade and therefore has a duly to exercise reasonable care in the construction and maintenance of its pipes to prevent foreseeable risk of harm.[9] Thurlow v. Provincetown, 337 Mass. 450, 453 (1958) (“A municipality is liable for its negligence in connection with maintaining a water supply system, in part for the use of inhabitants who pay for the water supplied”); A. DePrato Co. v. Boston, 334 Mass. 186, 188 (1956) (municipality is liable for its negligence in laying pipes and keeping them in repair); Harvard Furniture Co., Inc. v. Cambridge, 320 Mass. 227, 229 (1946) (same). The Town is not relieved of its common law duty by the fact that the residents of Bay View themselves paid the Town for the extension of the waterworks into their development. Nothing in the common law duty of the Town to exercise reasonable care in the maintenance of property it uses in its business of selling water turns on whether that property happens to be located under a public as opposed to a private way.[10]
In addition to declaratory relief, the plaintiffs seek an injunction permanently requiring the Board of Public Works to perform its duty to maintain and repair common water lines installed by the Town in Bay View. Such an injunction is not warranted because a declaratory judgment should be sufficient to accomplish compliance by municipal defendants. E.g., Wendell v. Attorney General, 394 Mass. 518, 530 (1985); Secretary of the Commonwealth v. City Clerk of Lowell, 373 Mass. 178, 193 (1977).
The plaintiffs also seek restitution of the $ 1,574.51 which the Town billed to BVIC, and which BVIC paid in 1995, for water line repairs. In the absence of fraud or mistake of fact, neither of which are alleged, money voluntarily paid under a claim of right, with full knowledge of the facts on the part of the one making the payment, cannot be recovered unless the payment was exacted under conditions amounting to duress. Hinckley v. Barnstable, 311 Mass. 600, 604 (1942); Johnson v. Brockton, 8 Mass.App.Ct. 80, 82 (1979). This rule applies regardless of whether the law concerning the obligation to make payment is doubtful or is well known and without dispute, Hinckley v. Barnstable, supra, 311 Mass, at 605, and even if no legal obligation to make the payment existed. Murphy v. Brilliant Co., 323 Mass. 526, 529 (1948).
The requirement that duress be shown means that the payor must demonstrate that payment was compelled by the payor’s reasonable anticipation of substantial risk of loss, serious inconvenience, or adverse affect on the payor’s interest in the subject matter if payment is not immediately made. Restatement of Restitution §75, Comment f (1937). The party seeking restitution bears the burden of demonstrating duress. Id. The plaintiffs did not meet their burden. BVIC received and voluntarily paid the bill at issue after the Town had already made emergency repairs to the water line. BVIC has not demonstrated that if that payment to the Town had not been made, its members would have faced immediate and serious loss such that its payment could be deemed to have been made under conditions amounting to duress. Indeed, BVIC chose not to pay the bills rendered by the Town on January 31, 1996 and March 8, 1996, and there is no evidence that, as result, BVIC or its members have suffered any consequences. Compare Kirchner v. Pittsfield, 312 Mass. 342, 346 (1942) (sewer assessment paid under duress where the assessor had a warrant authorizing sale of the property without the interposition of judicial process upon which taxpayer could be heard if the assessment was not immediately paid); B&B Amusement Enterprises, Inc. v. City of Boston, 297 Mass. 307, 308 (1937). (lessor paid its former tenant’s water bill under duress where the city wrongfully threatened to immediately shut off water service to the premises if bill was not paid). Moreover, the plaintiffs had ample opportunity to seek declaratory relief as to the Town’s obligation to repair pipes under Bay View’s ways after the Board voted in 1981 that it would no longer pay to repair leaks in water lines within private subdivisions, after the Board in 1983 denied Bay View residents’ request that it reconsider that decision, after the Board formalized its policy in 1988, and following the Town Meeting decision in 1989 to support the Board’s policy. The plaintiffs chose not to bring suit until 1996. In sum, BVIC is not *96 entitled to restitution from the Town for the sum of money billed to and paid by BVIC for water line repairs.
The plaintiffs are also not entitled to recover from the Town the monies expended by BVIC to hire private contractors to make common water line repairs which the Board refused to make or the costs incurred by BVIC in restoring the roads to good condition after the Town or third parties excavated them to repair the common lines. The funds so expended total $9,687.50. Of this amount, $4,287.50 was incurred within the statute of limitations period.
Damages are not available to the plaintiffs for the Town’s breach of its statutory duty under G.L.c. 40, §§39A-39E. That statute contains no provision for a private cause of action for damages, and, in the absence of any indication from the Legislature supporting such an inference, this court declines to read such a remedy into the statute. Cf. Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 543-44 (1998).
To the extent that the plaintiffs seek compensatory damages for the Town’s breach of its common law duty to repair the water mains, the plaintiffs are also not entitled to recover anything.[11] They took no steps to avoid the need to make such payments by bringing a declaratory action. Moreover, all payments were made by BVIC, but no duty was owed by' the Town to BVIC, which is neither a consumer of the town’s water nor an owner of the way. BVIC may have spent monies to make the needed repairs, but it suffered no legally cognizable injury from the Town’s breach of its duty. As for plaintiffs Hendrie and Puryear, there is no evidence that either of these individuals spent any money on repairs. Tort damages are founded on the principle of compensation; they are not entitled damages in the absence of proof that either actually paid for any part of the repairs. Indeed, there is no evidence that either of the individual plaintiffs own property abutting the only two ways, DeGaris and Dutra Avenues, under which the water mains that leaked were located. There is no evidence that the water main breaks caused them or their individual properties any actual harm.
ORDER
For the foregoing reasons, plaintiffs’ request for injunctive relief and monetary damages are DENIED and it is hereby ORDERED that a judgment enter DECLARING that:
The Town of Dartmouth and its Board of Public Works is legally obligated to maintain and repair, at public expense, the common water lines installed by the Town in Bay View, including restoration of any way to the condition it was in prior to any such repair.

When the water system was extended into Bay View, the Town did not yet have a subdivision control law. After one was promulgated in the 1960’s, the Town has required developers to provide and finance any extensions required to tie into the town water system.

Article V, §4 provides as follows:
The service pipe from the main to the curb box, and the curb box at the property line shall be owned and maintained by the Water Division, on accepted roads only. Unaccepted or private areas are the responsibility of the homeowner. From the curb box, into the building to the meter and beyond, the service shall be installed, owned and maintained by the consumer. In the event of a leak in the consumer’s service, such leak will be repaired upon discovery as soon as possible as a condition of continued water supply. Consumer may be billed for the estimated leakage if repairs are not made within a reasonable time frame.

 Where, as here, the statutory language is clear, it must be interpreted in accordance with the plain and ordinary meaning of its words. Nationwide Mutual Insurance Co. v. Commissioner of Insurance, 397 Mass. 416, 420 (1986).

 Insofar as a town has discretion whether or not to extend waterworks to a private development, it may be able to condition the extension of its waterworks into a private area upon the landowners assuming the obligation to maintain the infrastructure or to pay for necessary repairs. When the Town extended the water supply system to Bay View, it did not negotiate such terms, notwithstanding the fact that Sections 39A-39E of Chapter 40, enacted in 1938, were effective when the Town constructed the water mains at issue. Indeed, the Town proceeded to maintain and repair the infrastructure for thirty years.

Plaintiffs do not challenge the Board’s policy that service pipes connecting the main to individual buildings must be maintained by the consumer. This policy applies to all consumers equally, whether they abut a private way or a public road.

Unlike the case with a leak in the service pipe running from the main to a building where water can be shut off to a particular building to fix the leak without affecting any other premise, here the main underlying the ways carries water throughout the subdivision. If the Town does not own the common lines, as it contends, then presumably each property owner would own so much of the main as runs beneath the landowner’s section of the way and, if there were a break in the main, only the owner of the portion of the way under which the common line is leaking would have the obligation to repair it and have to shoulder the entire cost, a result neither intended by the Town or the property owners when the mains were installed.

The Board’s reliance on cases such as Capuano, Inc. v. School Building Committee of Wilbraham, 330 Mass. 494, 496 (1953), for the proposition that this court has no authority to decide questions committed by law to the determination of public officials thus lacks merit. The present case involves the Town’s duties as a proprietor providing water to residents in exchange for a fee and not the exercise of discretion in its governmental capacity.

As discussed above, a municipality engaged in furnishing water service has discretion in determining whether and upon what terms to make extensions of its lines. Rounds v. Board of Water & Sewer Commissioners, 347 Mass. 40, 44 (1964). For purposes of this case, it matters not whether the Town could have conditioned the extension of the waterworks into Bay View upon the landowners’ agreement to assume responsibility for maintenance of the pipes because the Town did not do so.

The same result would obtain if damages were sought under a theory of breach of an implied contract. BVIC and the Town have no contractual relationship.